## PEOPLE v GODSEY

### OPINION OF THE COURT

1. HOMICIDE—DEFENSES—SELF-DEFENSE—RETREAT.

The general rule which requires retreat where practicable prior to utilization of deadly force in order to invoke a plea of self-defense to a charge of homicide is subject to the exception that deadly force may be utilized, with no retreat necessary, when one is assaulted in his dwelling.

2. HOMICIDE—DEFENSES—SELF-DEFENSE—RETREAT—INSTRUCTIONS TO JURY.

A defendant charged with homicide, who invoked the defense of self-defense, was not entitled to an instruction *sua sponte* from the trial court with respect to the rule that no retreat is necessary when the defendant is assaulted in his own dwelling where the homicide did not take place within the defendant's home but near the lot line separating the defendant's property from that of the deceased.

### DISSENT BY R. L. SMITH, J.

3. HOMICIDE—DEFENSES—SELF-DEFENSE—RETREAT—INSTRUCTIONS TO JURY.

*Failure to instruct the jury that no retreat was necessary where a defendant was assaulted in his dwelling in an instruction on self-defense in a trial for homicide was reversible error where the fatal blow was struck near the lot line dividing the property of the defendant from that of the deceased, and where the jury could have found from the evidence that the defendant was first assaulted on the front porch of his home.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide §§ 160, 162–169.
[2, 3] 40 Am Jur 2d, Homicide § 520.
[4] 40 Am Jur 2d, Homicide § 274.
[5] 58 Am Jur, Witnesses § 723.

4. HOMICIDE—EVIDENCE—PRIOR RELATIONS OF PARTIES—AGGRESSORS
   —INSTRUCTIONS TO JURY.

   Evidence of a prior altercation between a defendant and the
   deceased, in a trial for homicide, was properly admitted, be-
   cause a showing of the prior relations between the parties is
   permissible on the issue of who is the aggressor; a cautionary
   instruction would assist the jury in giving such evidence its
   proper perspective in relation to the circumstances.

5. CRIMINAL LAW—EVIDENCE—WITNESSES—IMPEACHMENT OF WITNESS
   —REBUTTAL WITNESSES—ATTEMPT TO INFLUENCE TESTIMONY.

   Testimony by the mother of a witness that the defendant and his
   wife attempted to influence the testimony of the witness, which
   was offered in rebuttal to the wife's denial of such attempt, was
   properly admitted; the mother's testimony was not impeach-
   ment of a witness on a collateral issue because there was
   evidence of the defendant's direct involvement.

Appeal from Macomb, Frank E. Jeannette, J.
Submitted Division 2 March 5, 1974, at Lansing.
(Docket No. 16438.) Decided July 22, 1974.

Fred L. Godsey was convicted of manslaughter.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *George N. Parris,*
Prosecuting Attorney, *Thaddeus F. Hamera,* Chief
Appellate Lawyer, and *Don L. Milbourn,* Assistant
Prosecuting Attorney, for the people.

*James R. McMaster,* for defendant on appeal.

Before: MCGREGOR, P. J., and R. B. BURNS and
R. L. SMITH,* JJ.

MCGREGOR, P. J. In his dissenting opinion, Judge
SMITH has accurately set forth the operative facts
and, in our view, correctly resolved all issues
raised by defendant save one. We will, therefore,

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

limit our discussion to the one point with respect to which our views differ from those expressed by Judge SMITH, to wit:

Whether the trial court erred in failing *sua sponte* to instruct the jury that the defendant was not obligated to retreat if in his own dwelling at the time of the fatal confrontation.

Viewing the facts most favorably to the defendant, the testimony adduced at trial indicates that defendant was in his home when he noticed the decedent was throwing rocks and pieces of concrete against his (defendant's) house and car; the defendant went to his front porch and was struck on the leg by a piece of concrete hurled by the decedent; that defendant came off the porch, grabbed a baseball bat and approached the decedent who was holding another piece of concrete at the time; and that defendant struck the decedent with the bat twice, whereupon the decedent fell to the ground. Although the decedent's body was found on his property, there was conflicting testimony presented regarding on which side of the lot line the fatal confrontation occurred.

The plea of self-defense is based on necessity; the law will condone a defendant's act of killing only where that act was, under the particular circumstances, the only available avenue by which the defendant could escape from a reasonably perceived threat of death or great bodily harm. As Justice Campbell noted in a leading case of *Pond v People,* 8 Mich 150, 173 (1860):

"Human life is not to be lightly disregarded, and the law will not permit it to be destroyed unless upon urgent occasion."

The general rule requiring retreat where practicable prior to utilization of deadly force is thus

simply one facet of this overriding premise, that necessity is the basis of any plea of self-defense.

To this retreat requirement there has been engrafted a well established exception—which is beyond our power as an intermediate level appellate court to disturb—that a "man is not, however, obliged to retreat if assaulted in his dwelling, but may use such means as are absolutely necessary to repel the assailant from his house, or to prevent his forcible entry, even to the taking of life". *Pond v People, supra,* 177.

The justification for this exception to the general rule is difficult to pinpoint. Justice Cardozo, in *People v Tomlins,* 213 NY 240, 243; 107 NE 496, 497 (1914), observed:

"It is not now, and never has been the law that a man assailed in his own dwelling, is bound to retreat. If assailed there, he may stand his ground, and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home." See *People v McGrandy,* 9 Mich App 187; 156 NW2d 48; 26 ALR3d 1292 (1967).

Dean Prosser has suggested that the no retreat rule is based on " 'an instinctive feeling that a home is sacred, and that it is improper to require a man to submit to pursuit from room to room in his own house.' " Prosser, Torts (4th ed), § 19, p 111, quoting from Restatement of Torts, Tentative Draft, Commentary to § 84.

On a more pragmatic level it can be argued that one's own dwelling is presumptively the safest haven from attack and retreat therefrom would correspondingly increase the risk of harm and thus be impractical and unnecessary.

Whatever may be the present-day validity of these suggested justifications for the "no retreat in

dwelling" rule, the rule itself is well established in Michigan. Our only legitimate function, therefore, is to consider its applicability here in light of the facts outlined above.

Was the defendant in his dwelling at the time of the fatal assault? If so, the trial court was obliged to *sua sponte* instruct the jury with respect to the no retreat rule. *People v Paxton,* 47 Mich App 144; 209 NW2d 251 (1973). If not, the trial court's failure to so instruct was, of course, not reversible error.

Michigan case law provides no precise definition of "dwelling" for purposes of the no retreat rule. *Pond, supra,* is frequently cited for the proposition that the term "dwelling" embraces the curtilage of a house and correspondingly extends the area within which one is not obliged to retreat beyond the mere physical structure utilized as an abode. See, for example, 52 ALR2d 1458, Annotation, *Homicide: Extent of Premises Which May Be Defended Without Retreat Under Right of Self-Defense,* § 2, and 40 Am Jur 2d, *Homicide,* § 168, p 455, footnote 4. In our judgment, however, such a reading of Pond is unjustifiably expansive. In that case the killing took place in a net house, located on defendant's property, but approximately 36 feet from his actual home. The court noted:

"A question was raised whether the net-house was a dwelling or a part of the dwelling of Pond. We think it was. It was near the other building, and was used not only for preserving the nets which were used in the ordinary occupation of Pond, as a fisherman, *but also as a permanent dormitory for his servants."* (Emphasis added.) 8 Mich 150, 181.

The fact that the net house was utilized "as a permanent dormitory for [the defendant's] servants," serves to undermine the argument that

Pond extends the right of self defense without retreat to any portion of the curtilage of a defendant's home. We read Pond as extending that right only to inhabited outbuildings located within the curtilage of the home. Indeed, in this day of small city and suburban residential lots, the contrary rule—that a man may utilize deadly force without retreat whenever attacked in the curtilage of his home—would effectively limit the applicability of the prevailing retreat requirement to situations in which the defendant was on another's property. Such a result, to us, is both an unwarranted extension of Michigan law and inconsistent with the high value placed on human life by any enlightened society.

In this case, all the testimony adduced at trial indicated that the fatal blows were inflicted by the defendant on or near the lot line separating his property from that of the deceased. Further, the police officer investigating the homicide testified that the decedent's body was found one foot on his side of the lot line. In these circumstances and in light of our discussion above, we are of the opinion that the defendant was not, as a matter of law, in his dwelling at the time of the killing and, therefore, the trial court did not err in failing to instruct the jury with respect to the "no retreat in dwelling" rule.

Affirmed.

R. B. BURNS, J., concurred.

SMITH, J. *(dissenting)* Fred L. Godsey was convicted by a jury of manslaughter having been charged with the offense of second-degree murder. On December 1, 1971, defendant was sentenced to a 5 to 15 year term in the state prison, pursuant to MCLA 750.321; MSA 28.553. A motion for a

new trial was denied and defendant appeals. I would reverse and remand for a new trial.

William Duncan and defendant were next door neighbors. They were not friendly neighbors, there having been previous arguments over the Godsey dog, their children, and about throwing stones from one lawn to the other. Testimony was given that about a year previous to the altercation leading to the death of Mr. Duncan, defendant had pulled a switch-blade knife from his pocket and offered to fight the deceased.

On July 12, 1970, an altercation arose between deceased and defendant. While many facts were in dispute we recite only those facts which bear upon the disputed issues.

Shortly before 7 o'clock on the evening in question deceased was clearing his lawn of debris which had been left there the day before when defendant had a new driveway installed between their two houses. One version was that deceased was putting the debris in a trash can in his garage. Another version was that deceased was throwing the debris against defendant's car and house.

In any event defendant, who had been inside his house, appeared on his front porch where he claims he was struck on the leg by a piece of cement. At this point defendant left his front porch and with a baseball bat in hand approached deceased. Defendant claims deceased was holding a large piece of cement in his hand. Defendant struck deceased on the shoulder and when deceased did not release the cement he struck the deceased on the head. The latter blow resulted in death four days later.

In his opening statement defendant informed the jury that the blow was delivered in self-de-

fense. The court charged the jury in the following manner:

"It must also appear that * * * there was no way open for him to retreat to a place of safety and his only safety lay in striking the alleged aggressor to repel the attack."

and,

"Before a man can avail himself of this defense you, ladies and gentlemen of the jury, must be satisfied that he did all he could do to avoid the conflict."

The jury requested additional instructions and the trial court responded:

"It must also appear from the circumstances that were apparent to him at the time that he was in imminent danger of loosing (sic) his life or suffering some grievous bodily injury and there was no way open for him to retreat to a place of safety, and his only safety lay in striking the aggressor to repel the attack."

No objections were made by defendant to these instructions. Defendant now contends that the court should have instructed the jury that defendant was not obliged to retreat if assaulted in his own home.

In dealing with this issue I would follow the holding in *People v Paxton,* 47 Mich App 144; 209 NW2d 251 (1973), wherein the court held that a trial court erred in failing, *sua sponte,* to instruct the jury that a defendant had no duty to retreat within his own home, in order to establish the defense of self-defense to a charge of manslaughter.

I do not fail to note the case of *People v Broom,* 50 Mich App 337; 213 NW2d 247 (1973), wherein the majority held that there was no miscarriage of

justice in the court's instructions when read as a whole. The trial court in *Broom* instructed the jury:

" 'The other man was not a trespasser though; the deceased; he had been given permission to be there.' "

I agree with the dissenting opinion in *Broom* that *People v McGrandy,* 9 Mich App 187, 190; 156 NW2d 48, 49 (1967), establishes that:

" 'A man is not, however, obliged to retreat if assaulted in his dwelling, but may use such means as are absolutely necessary to repel the assailant from his house, or to prevent his forcible entry, even to the taking of life.' "

In *McGrandy* the altercation was between husband and wife

In most cases the failure to give an instruction, even an important instruction, will not be considered reversible error if such an instruction has not been requested. There are a few exceptions to this general rule. For example it is necessary to instruct on all elements of an offense. *People v Miller,* 35 Mich App 627; 192 NW2d 517 (1971), *People v Crook,* 28 Mich App 490; 184 NW2d 459 (1970). I find the situation in this case to be much akin to the situation where an element of an offense has been omitted from the instructions. In this case the defendant's assertion of innocence rested solely on a claim of self-defense, and the trial court's instructions effectively foreclosed the consideration of that defense. Judge Cardozo considered a similar case in *People v Tomlins,* 213 NY 240, 245–246; 107 NE 496, 498 (1914), saying:

"The charge that it was his duty to escape, if he could, was, therefore, equivalent to an instruction to the jury that the defendant had failed to justify the

homicide on the ground of self-defense. It was thus a direction to find the defendant guilty, at least of some degree of crime. *(People v Walker,* 198 NY 329, 334; 91 NE 806 [1910].) The situation is the same in effect as if the issue of self-defense had not been submitted to the jury at all. It was submitted in form, but not in substance, for the submission was coupled with instructions that predetermined the answer. It is the defendant's right to have the question of his guilt determined by the verdict of a jury rather than by the judgment of this court; and whatever our own opinion of his guilt may be, we cannot say, until it has been passed upon by a jury, that justice has been done."

I note that the jury could have found from the evidence that the first assault on defendant was on his front porch as he was emerging from his home. In *People v Lilly,* 38 Mich 270, 276 (1878), the Court reversed a manslaughter conviction where defendant was defending himself in his yard and at his own front door. There the Court held:

"The jury should have been instructed in effect that if they were satisfied that Lilly being *at his own house* had reason to believe and did believe from Kreiger's previous and present language, manner and actions, and what had already taken place, that it was necessary to inflict the wounds he did inflict upon Kreiger to save his own life or to protect himself from danger of great bodily harm, he was excused." (Emphasis supplied)

I would find reversible error in the failure of the court to instruct on the no retreat element in the self-defense instruction as it applied to the disputed facts in the case before us.

Defendant contends that it was error to allow evidence to be produced for jury consideration of a prior altercation between defendant and deceased. I note that the altercation referred to was alleged to have occurred the previous spring. That would

put it about nine months previous to the fatal altercation of July 12, 1970. The wife of the deceased testified that on a Sunday, the previous spring, defendant, in her presence, asked deceased to come out of his garage and fight him. At this occasion the witness claimed defendant took a switch-blade knife from his pocket and showed it to deceased. When deceased closed the garage door there were no further developments.

On the issue of who is the aggressor the law clearly makes it permissible to show the prior relations between the parties. In 3 Gillespie, Michigan Criminal Law and Procedure, (2d ed), § 1707, p 2069, it is stated:

"The previous relations of the defendant and the deceased may be shown at the trial, and it is not error to admit testimony of ill-feelings between the accused and his victim, extending back two years before his death, although the showing might be remote."

A cautionary instruction will assist the jury in giving such evidence its proper perspective in relation to the circumstances. I find no error here.

Finally I find no error in the admission of testimony that defendant's wife had attempted to influence the testimony of witness Rodney Kozyra. Defendant's wife took Rodney to visit defendant while the latter was in jail. Rodney testified that on this occasion the defendant told him he would pay him if he testified for him at his trial. When defendant's wife was asked whether she and defendant had offered to pay $35 for Rodney's testimony she denied it. Mrs. Kozyra, Rodney's mother, called in rebuttal of this testimony, stated that defendant's wife had made such an offer in her presence.

Under these circumstances the testimony offered

in rebuttal was not impeachment of a witness on a collateral matter. There was evidence of defendant's direct involvement. It would appear that the cautionary instructions given by the court to the effect that this impeachment testimony only went to the credibility of the witness (defendant's wife) was more favorable than defendant was entitled to.

I would reverse and remand for a new trial.