PEOPLE v OSTER (ON RESUBMISSION)

Docket No. 47063. Submitted October 10, 1979, at Lansing.—Decided April 23, 1980. Leave to appeal applied for.

Ronald C. Oster was convicted in 1974 of voluntary manslaughter following a bench trial. Oster appealed that conviction to the Court of Appeals challenging the examining magistrate's binding him over on an open charge of murder and asserting that acquittal was mandated by reason of unrebutted expert testimony. The Court of Appeals affirmed. See *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976). The Michigan Supreme Court denied leave to appeal. See 397 Mich 848 (1976). In 1978, Oster filed a delayed motion to vacate sentence and to resentence on the basis that several prior convictions which had been obtained without defendant's having benefit of counsel had been included in the presentence report considered by the trial court at the time of sentencing. The Oakland Circuit Court, John N. O'Brien, J., after a hearing, denied the motion, indicating that the disputed convictions played no significant part in the fixing of sentence and that resentencing was not required. Oster sought superintending control over the Court of Appeals in the Michigan Supreme Court. The Supreme Court directed that the Court of Appeals Clerk resubmit Oster's original appeal at the October, 1979, session of the Court of Appeals. *Oster v Court of Appeals,* (Docket No. 58217, unpublished order of August 28, 1979). *Held:*

1. It is unnecessary for the Court of Appeals to decide the question of whether the defendant had remained in temporary possession of the residence in which the killing took place and

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide §§ 139, 162-169.
[2] 40 Am Jur 2d, Homicide §§ 56-64.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 583-586.
   40 Am Jur 2d, Homicide § 554.
[5] 21 Am Jur 2d, Criminal Law § 530.
   40 Am Jur 2d, Homicide § 550.
   Defendant's right to disclosure of presentence reports. 40 ALR3d 681.
[6] 21 Am Jur 2d, Criminal Law §§ 315, 319, 321.

thus had no duty to retreat before using deadly force in defense of himself. Even if the situs of the crime were considered to be defendant's residence and defendant had no duty to retreat in the face of the unprovoked attack upon him by the victim, the record establishes that defendant was not in sufficient danger to warrant the use of deadly force, and, thus, the defense of self-defense was not available to him. The question of the duty to retreat is separate from the question of whether excessive force was used by the defendant. Having found the use of excessive force, which thereby defeats the defense of self-defense, it is unnecessary to decide the question of any error which might have occurred with respect to the trial court's consideration of the defendant's duty to retreat under the circumstances.

2. The trial court's determination that defendant was guilty of voluntary manslaughter was supported by sufficient evidence.

3. Resentencing is not mandated by the fact that certain prior misdemeanor convictions which had allegedly been obtained without defendant's having benefit of counsel were considered at the time of sentencing, since the trial court affirmatively determined that the consideration of those convictions played no part in the court's determination of defendant's sentencing and that such consideration did not change the sentence the court would have imposed if those convictions had not been considered. Further, resentencing is not mandated by the disputed information in the presentence report, since the court determined that such information played no significant role in the determination of the sentence imposed.

4. Defendant was not denied the effective exercise of his right to allocution by the failure of the trial court to disclose *sua sponte* the contents of the presentence report. Error predicated upon the refusal to permit review of the contents of a presentence report will be heard only where the record establishes that the trial court was requested to divulge the contents of the presentence report.

5. The discussion and holdings relative to the issues raised in the prior appeal (67 Mich App 490 [1976]) are adopted.

6. Defendant's assertions of a denial of effective assistance of appellate counsel are meritless. Not only is the claim lacking in factual validity, since the issues raised in this appeal are found to be lacking in sufficient merit to warrant reversal, but also the claim is meaningless in this context, since defendant has been afforded a second appeal, the relief which would be

granted to one determined to have been denied effective assistance of appellate counsel.

Affirmed.

1. Homicide — Defenses — Self-Defense — Duty to Retreat — Dwellings — Deadly Force — Justification.

It is unnecessary to decide the question of whether a defendant had remained in temporary possession of a residence such that he would have no duty to retreat before using deadly force in the face of an assault upon him where it is determined that the defendant used deadly force in response to an unprovoked assault upon him under circumstances in which the defendant was not in sufficient danger to justify the taking of a life; the question of the duty to retreat is separate from the question of whether excessive force was used by the defendant when considering whether the defendant was justified in using deadly force in defense of himself.

2. Homicide — Manslaughter — Evidence — Sufficiency of Evidence.

A verdict of guilty of voluntary manslaughter is supported by sufficient evidence where the record supports the findings of the trier of fact that the defendant stabbed his assailant as a result of temporary excitement and without wickedness of heart or cruelty or recklessness of disposition following an unprovoked attack upon the defendant, but under circumstances where the use of deadly force is not justified.

3. Criminal Law — Sentences — Prior Convictions — Tucker Hearing — Remand — Different Result.

Resentencing is not mandated where a trial court, following a *Tucker* hearing, determined that, while the court considered in its sentencing certain misdemeanor convictions which were allegedly constitutionally infirm because such convictions were obtained without defendant's having benefit of counsel, consideration of the infirm convictions played no part in the court's determination of the defendant's sentence and did not change the sentence the court would have imposed if those convictions had not been considered.

4. Criminal Law — Sentencing — Presentence Reports — Disputed Information — Use of Disputed Information.

Resentencing is not mandated where a trial court determines that disputed information in a presentence report played no significant role in the court's determination of the sentence imposed.

5. CRIMINAL LAW — SENTENCING — PRESENTENCE REPORT — SUA
   SPONTE DISCLOSURE — REQUEST — RECORD — COURT RULES.

   A defendant is not denied the effective exercise of his right of
   allocution by a failure of the trial court to disclose *sua sponte*
   the contents of the presentence report; error predicated upon a
   refusal to permit review of the contents of a presentence report
   will be considered only if the record establishes that the trial
   court was requested to divulge the contents of the presentence
   report (GCR 1963, 785.12).

6. ATTORNEY AND CLIENT — CRIMINAL LAW — APPEAL — EFFECTIVE
   ASSISTANCE OF COUNSEL — SECOND APPEAL.

   A claim by a criminal defendant of ineffective assistance of
   appellate counsel is meritless where the defendant is granted a
   second appeal and the issues raised in the second appeal are
   found not to warrant reversal or resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Chief Appellate Counsel, for the people.

Ronald Charles Oster, *in propria persona.*

Before: R. B. BURNS, P.J., and D. E. HOLBROOK, JR. and P. J. GLENNIE,* JJ.

P. J. GLENNIE, J. Defendant was charged on an open count of murder. MCL 750.316; MSA 28.548, MCL 750.317; MSA 28.549. After a 1974 bench trial, defendant was convicted of voluntary manslaughter, contrary to MCL 750.321; MSA 28.553, and was sentenced to 10 to 15 years in prison. On November 18, 1974, defendant appealed his conviction to this Court raising the questions whether the examining magistrate abused his discretion in binding defendant over to the circuit court for trial on an open charge of murder and whether

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

acquittal was mandated due to unrebutted expert opinion. In *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976), another panel of this Court held that the magistrate had not abused his discretion in binding the defendant over for trial on an open charge of murder and that acquittal was not mandated due to unrebutted expert opinion. Subsequent to this Court's decision in the case, the Michigan Supreme Court denied leave to appeal. See 397 Mich 848 (1976).

On September 6, 1978, defendant filed a delayed motion to vacate sentence and/or to resentence on the basis that several convictions which had been obtained without defendant's having benefit of counsel had been included in the presentence report considered by the trial court at the time of sentencing. Defendant argued that such convictions should not have been considered by the court and presented proof which he believed complied with the *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974), requirements for invoking a *Tucker* hearing. *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). Defendant further claimed he had been denied his right of allocution at the sentencing hearing.

The trial court denied the motion by an order dated October 25, 1978, indicating that the essential question was the weight given to such convictions, not whether they were considered at all. Thus, although the court "considered" the convictions allegedly obtained without benefit of counsel in sentencing defendant, it found that such misdemeanor convictions were not given sufficient weight so as to require resentencing, even if those convictions had been procured without benefit of counsel. The court concluded that the misdemeanors were "of such little significance, taking the

entire picture, as a whole, * * * as to bear no weight in concluding what sentence to impose".

On August 28, 1979, the Michigan Supreme Court issued an order in the matter of defendant's complaint for superintending control over this Court which directed the Court of Appeals Clerk to resubmit the appeal in *People v Oster* at the October session of this Court:

"On order of the Court, the plaintiff's complaint for superintending control is considered, and we direct the Court of Appeals Clerk to re-submit the appeal in *People v Ronald Charles Oster* (Court of Appeals Docket No. 23270) at the October session of that Court. The plaintiff's motion for an order to show cause becomes moot thereby and is DENIED." *Oster v Court of Appeals* (Docket No. 58217, unpublished order of August 28, 1979).

On October 10, 1979, the original appeal was submitted to this panel on the original briefs. Subsequently, pursuant to permission granted by this Court's order of September 18, 1979, defendant submitted a new appellate brief and the people responded. Defendant also filed a reply brief.

Defendant's new appellate brief raises the following issues not considered on the first appeal.

I. *Whether, when confronted with an unprovoked nonlethal assault, the defendant was under a duty to retreat from a home of which he was in joint charge during the owners' short-term absence.*

The testimony at trial indicated the following facts. Defendant had been placed in charge of the Southfield home jointly with the owners' daughter during the owners' Christmas vacation in Florida. The vacation began on or about December 24,

1973, and was to end sometime after January 1, 1974. Although defendant had moved some of his personal belongings from his home in Detroit to the Southfield home, on December 30, 1973, he returned to his own residence with his clothing, dog, and some instruments. Subsequently, defendant returned to the Southfield home at about midnight on December 31, 1973, intending to return to his own home in Detroit as soon as he could convince Diane Cohn, his roommate and girlfriend, to leave the New Year's Eve party given by her sister. Defendant and Diane Cohn were standing in the foyer of her parents' home, preparing to leave, when Alan Goodman, an uninvited guest, began an unprovoked argument with defendant. The disagreement shortly became a physical assault when defendant was punched by Alan Goodman despite defendant's attempt to end the dispute by turning away. Defendant was thrown onto his back about three steps up a stairway to the second floor. Believing himself in great danger, despite the fact that Alan Goodman was unarmed and the two men were surrounded by party guests, defendant pulled a knife he customarily carried for use in his work, leaped down the stairs, and stabbed Alan Goodman five times. Mr. Goodman subsequently died from the wounds.

At trial, defendant claimed that he stabbed the deceased in self-defense.

The trial court's findings as to defendant's actions on January 1, 1974, indicate that the court did not accept defendant's self-defense claim. The trial court found that Alan Goodman was the aggressor in a physical confrontation which defendant reasonably believed he would lose. The court then found that defendant should be held to a duty to retreat from the confrontation, that he

could have retreated before the confrontation began, and that he stabbed Alan Goodman on the unreasonable conclusion that he was in sufficient danger to justify taking a life.

Defendant challenges these findings insofar as they are premised on a duty to retreat. In substantial part he relies on *People v Smith,* 54 Mich App 652; 221 NW2d 464 (1974), in support of his contention that the Cohn home should have been considered his home on January 1, 1974. Defendant argues that, if such were true, Michigan law does not require him to have retreated from the Cohn home.

In *People v Smith, supra,* 653, the defendant had moved out of his house and into a friend's apartment in an effort to break off a relationship with the deceased. The purpose of his stay in the friend's apartment was to give the deceased time to find a new residence and vacate defendant's home. One week later, while defendant was at his friend's apartment, the deceased threatened defendant with a shotgun which she shot twice. The second shot, which was aimed at defendant, hit the ceiling when other persons diverted the gun. This Court ruled as follows with regard to defendant's duty to retreat:

"Defendant contends that, since he was confronted by the deceased in what was his dwelling at the time of the shooting, he was under no duty to retreat and that the court's instruction to the contrary constitutes reversible error. We agree. The instruction given in the instant case was almost identical to that found objectional by another panel of this Court in *People v McGrandy,* 9 Mich App 187; 156 NW2d 48 (1967). The prosecution argues that the defendant herein was not in his own dwelling at the time of the shooting but, rather, he was only temporarily present in the dwelling of another. While this is true we do not, under the facts

of this case, consider this to be sufficient to warrant a different result. Defendant left his home and took up residence at Linda Guerrero's apartment where he stayed approximately one week and where he intended to stay until the deceased left his home. This was, for all practical purposes, his dwelling." 54 Mich App 652, 655.

For purposes of this discussion, it is assumed as proven that: the defendant and Diane Cohn were "in charge of" the Cohn home in the owners' absence; the defendant and Diane had moved into the home more than ten days before the party; the defendant had taken some personal belongings back to his Detroit home on December 30, 1973; and the defendant intended to return to his Detroit home on January 1, 1974, with Diane and spend the remainder of the "night" at that location. Finally, it is assumed that the defendant's return to his Detroit home was not occasioned by the termination of his responsibility for the Cohn home but rather by an argument with Diane, the defendant having still retained his key to the Cohn home on the date of the offense. These facts are essentially indistinguishable with respect to the question of the defendant's residence from the facts in the *Smith* case. In both instances, the defendants were temporarily residing in the home of another, while still in possession of a home which could be considered each defendant's permanent residence. *Smith* can be distinguished from the instant case, however, in terms of the nature of the attack which occasioned the need of the defendant to defend himself. Thus, this case may be resolved without reaching the issue whether defendant was in his "home" at the time of the stabbing.

In *Smith,* the defendant was confronted with an

aggressor armed with a lethal weapon. But for the intervention of other persons in the apartment, the defendant would have been seriously injured by the second shot fired by the deceased. In the instant case, the trial judge found that the defendant acted unreasonably when he stabbed the deceased and that the defendant was not in sufficient danger to justify taking a life. This finding distinguishes the instant case from *Smith.*

A review of the Criminal Jury Instructions commentary on self-defense reveals the following principles of law. With regard to the duty to retreat, the commentary notes:

"In summary, the duty to retreat appears to be applicable only in cases amounting to *se aut sua defendendo,* that is, where the defendant may be somewhat at fault, such as in a sudden affray or when repelling a non-lethal assault. However, even in those situations, it does not apply when the defendant is in his own home, regardless of whether the deceased was jointly occupying the home. It does not apply to justifiable homicide, such as in repelling or preventing forcible felony, and it does not apply to cases involving the use of non-deadly force." 1 CJI, p 7-197.

As to the duty to retreat where the defendant is repelling a nonlethal assault, *Pond v People,* 8 Mich 150, 176-178 (1860), states that:

" 'Before a person can avail himself of the defense that he used a weapon in defense of his life, he must satisfy the jury that defense was necessary; that he did all he could to avoid it; and that it *was necessary to protect his own life, or to protect himself from such bodily harm as would give him a reasonable apprehension that his life was in immediate danger.* If he used the weapon, having no other means of resistance, and no means of escape, in such case, if he retreated as far as he could, he would be justified.'

\* \* \*

"A man is not, however, obliged to retreat if assaulted in his dwelling, but *may use such means as are absolutely necessary to repel the assailant from his house,* or to prevent his forcible entry, even to the taking of life. But here, as in the other cases, *he must not take life if he can otherwise arrest or repel the assailant;* 2 *Bish Cr L,* § 569; 3 *Greenl Ev,* § 177; *Hawk P.C., B 1, ch* 28, § 23. Where the assault or breaking is felonious, the homicide becomes justifiable, and not merely excusable.

\* \* \*

"Life may not properly be taken under this rule where the evil may be prevented by other means within the power of the person who interferes against the felon. Reasonable apprehension, however, is sufficient here, precisely as in all other cases." (Emphasis supplied.)

An application of these principles to the instant case supports the trial court's verdict, regardless of whether defendant was in his "home" or not. The defendant was not the aggressor in the physical confrontation with Alan Goodman. Nevertheless, he was repelling a nonlethal assault: Alan Goodman had no weapon and the circumstances of the party would support the finding that the defendant was not in danger of losing his life or suffering serious bodily harm. As this Court found on the initial appeal, the opinions of the expert witnesses who testified on the defendant's behalf need not "be accepted by the trier of fact as conclusive of the *fact.*" 67 Mich App 490, 500. Further, even if the trial court believed and accepted the expert witness's testimony, "such evidence would not be sufficient to establish the defense of self-defense. Not only must the defendant believe himself to be in great danger, but that belief must also be

reasonable under the circumstances. *People v Shelton,* 64 Mich App 154; 235 NW2d 93 (1975)." 67 Mich App 490, 500-501. Believing that the defendant's claimed perception of imminent death was not reasonable, the trial court found the defendant guilty of voluntary manslaughter.

The defendant's contention as to a duty to retreat while "in charge of" the Cohn home would likely have merit if he had been confronted with a lethal attack he had done nothing to provoke. The physical confrontation with Alan Goodman on January 1, 1974, was not lethal, however. The defendant thus could not rely on his claim of self-defense, since his belief that the fight would end in his death was not reasonable under the circumstances. This conclusion does not conflict with *People v Smith, supra,* where the defendant was confronted with an aggressor who twice discharged a shotgun in his direction and where the defendant only escaped being hit by the second shot when bystanders diverted the shotgun.

Michigan law on self-defense is unclear in some respects. The duty to retreat issue must be clearly separated from the more essential question whether defendant used only "such means as [were] necessary to repel his assailant". 1 Gillespie, Mich Crim Law & Proc (2d ed), § 26, p 65. As explained by this Court in *People v Godsey,* 54 Mich App 316, 318-319; 220 NW2d 801 (1974):

"The plea of self-defense is based on necessity; the law will condone a defendant's killing only where that act was, under the particular circumstances, the only available avenue by which the defendant could escape from a reasonably perceived threat of death or great bodily harm. As Justice CAMPBELL noted in a leading case of *Pond v People,* 8 Mich 150, 173 (1860):

" 'Human life is not to be lightly disregarded, and the

law will not permit it to be destroyed unless upon urgent occasion.'

"The general rule requiring retreat where practicable prior to utilization of deadly force is thus simply one facet of this overriding premise, that necessity is the basis of any plea of self-defense.

"To this retreat requirement there has been engrafted a well established exception—which is beyond our power as an intermediate level appellate court to disturb—that a 'man is not, however, obliged to retreat if assaulted in his dwelling, but may use such means as are absolutely necessary to repel the assailant from his house, or to prevent his forcible entry, even to the taking of life.' *Pond v People, supra,* 177."

"The justification for this exception to the general rule is difficult to pinpoint. Justice Cardozo, in *People v Tomlins,* 213 NY 240, 243; 197 NE 496, 497 (1914), observed:

" 'It is not now, and never has been the law that a man assailed in his own dwelling, is bound to retreat. If assailed there, he may stand his ground, and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home.' See *People v McGrandy,* 9 Mich App 187; 156 NW2d 48; 26 ALR3d 1292 (1967)."

"Dean Prosser has suggested that the no retreat rule is based on 'an instinctive feeling that a home is sacred, and that it is improper to require a man to submit to pursuit from room to room in his own house.' Prosser, Torts (4th ed), § 19, p 111, quoting from Restatement of Torts, Tentative Draft, Commentary to § 84.

"On a more pragmatic level it can be argued that one's own dwelling is presumptively the safest haven from attack and retreat therefrom would correspondingly increase the risk of harm and thus be impractical and unnecessary."

Accordingly, even if the defendant had no duty to retreat from the Cohn home, he acted unreasonably in stabbing Alan Goodman five times, in light

of the fact that Alan Goodman was unarmed and only slightly larger than the defendant.

"Human life is not to be lightly disregarded, and the law will not permit it to be destroyed unless upon urgent occasion." *Pond v People, supra,* 173.

The testimony presented a fact question which was resolved by the trial court. We find no merit in the defendant's claim of self-defense and we conclude there was no reversible error in the trial court's findings of fact in this case.

II. *Whether the verdict was supported by sufficient evidence.*

The defendant argues that the verdict herein was not supported by sufficient proof of every element of the offense. Although the defendant has not distinguished which elements of voluntary manslaughter were not supported by the evidence, we find that sufficient evidence was introduced at trial "which could justify a trier of fact in reasonably concluding that defendant is guilty beyond a reasonable doubt". *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979). Several res gestae witnesses testified that, after the defendant was thrown onto the stairs, Alan Goodman was standing near the bottom step. The defendant then pulled his knife and leapt onto Alan Goodman, stabbing him 5 times. The trial court found that, at this point, the defendant intended to do serious bodily harm to Alan Goodman. Such a finding is amply supported by the above facts. When the defendant pulled the knife from his waistband, and jumped onto Alan Goodman, his act was the result of temporary excitement, by which the control of reason was disturbed, rather than any wickedness of heart, or cruelty or recklessness of disposition. *People v Holmes,* 111 Mich 364, 370; 69 NW 501 (1896). Thus, the defendant's motion

for directed verdict of acquittal, made at the close of the prosecutor's proofs, was properly denied, and defendant was properly convicted of manslaughter.

III. *Whether the defendant should be resentenced because his original sentence was premised on consideration of certain previous convictions obtained without the defendant having benefit of counsel.*

The defendant argues that convictions obtained without the defendant having benefit of counsel may not be considered by the court at time of sentencing. *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974).

In *People v Moore, supra,* 440-441, the Michigan Supreme Court ruled that:

"To invoke a *Tucker* hearing, the defendant must (1) present prima facie proof that a previous conviction was violative of *Gideon [Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799; 93 ALR2d 733 (1963)], such as a docket entry showing the absence of counsel or a transcript evidencing the same; or (2) present evidence that he has requested such records from the sentencing court and it has failed to reply or has refused to furnish copies of records within a reasonable period of time, say four weeks. Upon such presentation, either (1) or (2), the burden will then be upon the prosecutor to establish the constitutional validity of the prior conviction. Thus, if the prosecutor contends that the defendant waived counsel, the burden will be on him to show affirmative record evidence of waiver.

"If the prosecutor obtains and furnishes the judge and the defendant or his lawyer with photocopies of records establishing the constitutional validity of the prior conviction, the judge may decide the matter on the papers presented unless the defendant, on notice, shows cause to hold a hearing at which he is present. Unless the prosecutor furnishes such evidence within

one month of the defendant's motion, the judge shall set the matter for an early hearing and order the production of the defendant at the hearing."

Materials were submitted to the trial court in September, 1978, which were intended to comply with the requirements of option (2) described above. The trial judge then noted that, while he had considered the misdemeanor convictions which were alleged to have been obtained without the defendant having benefit of counsel, they were not of sufficient weight to change the sentence he would have imposed if he had not considered those convictions. Accordingly, he denied the motion to resentence.

This Court was recently confronted with a similar case. In *People v Watroba,* 89 Mich App 718, 723-724; 282 NW2d 196 (1979), the defendant claimed that the sentencing judge had impermissibly taken into consideration certain constitutionally infirm prior convictions. At a hearing on the question, the trial court ruled that the sentence would not have been different in the absence of such convictions. On appeal, this Court ruled as follows:

"In order to initiate a *Tucker* proceeding, a defendant must present prima facie proof that the prior conviction was constitutionally infirm, *People v Moore, supra,* at 440-441, and that it was considered by the trial judge in sentencing, *United States v Tucker, supra.* However, reliance upon a faulty conviction does not necessarily mandate a different sentence. A careful reading of *Tucker* reveals that the concern in that case was not whether the prior convictions had been considered (for the record had already indicated they were), *but whether the sentence imposed might have been different* if the sentencing judge had known that the previous convictions had been unconstitutionally obtained. The

*Tucker* case was remanded for *reconsideration* of defendant's sentence.

"A *Tucker* hearing, then, determines whether the punishment might have been different absent consideration of infirm convictions. See *People v Moore, supra,* at 439. That determination was made in the case at bar.

"We are not unmindful of the language in *People v Moore, supra,* at 439, that,

" '[w]hile a harmless error rule might also be applied to a *Tucker* claim, from a practical point of view, * * * in most cases a judge can more readily resentence a convicted person than determine whether whatever consideration was given an invalid conviction at sentencing was harmless.'

and we agree that this remains the better procedure to follow in cases such as these. However, we read that excerpt as requiring, not necessarily an altered sentence, but rather a full re-evaluation of the record and circumstances in conjunction with defendant's claim of improperly considered convictions, which proceeding could just as easily produce the same sentence as it could a different one." (Emphasis in original.)

The defendant's contentions on this issue cannot succeed in the face of the ruling in *Watroba.* The trial court clearly ruled that the ten-year-old misdemeanor convictions played no real part in its determination of the defendant's sentence.

IV. *Whether the defendant's sentence should be vacated because premised in part on consideration of inaccurate and incomplete information as to charges which had been dismissed.*

In Michigan, this Court has several times considered the inclusion of inaccurate information in a presentence report. In *People v McIntosh,* 62 Mich App 422, 448; 234 NW2d 157 (1975), the report contained information as to criminal activity not resulting in conviction. After an extended discussion of prior cases, this Court held that:

"GCR 1963, 785.12, leaves to the trial judge not only discretion to consider and weigh the contents of the presentence report, objective and subjective, but also discretion as to the means of implementing the due process duty of ascertaining, when the objection is raised, that the defendant is not prejudiced in sentencing by false information. *United States v Sanders,* 438 F2d 344 (CA 5, 1971). While not compelled to hold an evidentiary hearing, in the exercise of his discretion, he may do so. He may accept unsworn statements of the defendant. He may ascertain that the disputed matter is not relevant to his decision, or is of little weight, or could be safely disregarded without regard to its accuracy in light of other facts. There are many ways, in the exercise of his discretion, that he may meet the problem."

The trial judge held an evidentiary hearing on the defendant's contentions, and "ascertain[ed] that the disputed matter [was] not relevant to his decision, or [was] of little weight * * *". We hold that the trial judge did not abuse his discretion in so ruling.

V. *Whether the defendant's sentence should be vacated because the defendant was, in effect, deprived of his right of allocution by reason of the failure to permit inspection of the presentence report.*

The law on a defendant's right to inspect his presentence report is relatively clear. GCR 1963, 785.12, provides in pertinent part that:

"The sentencing court shall permit the defendant's attorney, or if the defendant is not represented by counsel, the defendant, to inspect the presentence report. The prosecution must also be shown the report. Both parties must be given an opportunity at the time of sentencing to explain or controvert any factual representations in the presentence report."

Quite literally, this provision does not require that

a defendant personally review a copy of the presentence report, so long as his attorney is given the opportunity to review the report. The right of allocution at sentencing guaranteed by GCR 1963, 785.8(2) has application with respect to GCR 1963, 785.12 only to the extent that it requires that the court "give defendant and his attorney a reasonable opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence". The latter requirement was met in the instant case.

In *People v Moore,* 60 Mich App 1, 4; 230 NW2d 281 (1975), this Court ruled that, as the court rule does not require the sentencing judge to disclose *sua sponte* the contents of the presentence report, a request to review the report at sentencing must be made on the record. See also, *People v. Worden,* 91 Mich App 666, 685; 284 NW2d 159 (1979).

The rule in *Moore, supra,* operates to defeat defendant's claims. Any request made by the defendant or his attorney must have occurred in chambers. *People v Moore* requires that the request appear on the record. As it does not so appear, the defendant's claim is without merit.

VI. *Whether the defendant was denied effective assistance of counsel on his initial appeal.*

The defendant claims that, since his appellate counsel failed to raise the five issues presented in this appeal in his initial appeal before this Court, he was denied effective assistance of counsel on appeal.

The issue presented is whether the defendant was denied his right to appeal by reason of his attorney's failure to raise the issues discussed in this opinion.

The right to effective assistance of trial counsel has been extensively analyzed in *People v Degraf-*

*fenreid,* 19 Mich App 702; 173 NW2d 317 (1969), and *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). Where ineffective assistance of *trial* counsel is found, the defendant may be granted a new trial.

In the instant case, the defendant claims ineffective assistance of *appellate* counsel. While we agree that the defendant's appellate counsel might have better represented the defendant if the self-defense/retreat and sentencing issues had been raised on the first appeal, the record is convincing that the issue of self-defense/retreat has little merit. The sentencing issues have been resolved by existing precedent. The failure to raise these issues does not reflect the commission of a serious mistake. Thus, the defendant was not deprived of effective assistance of counsel on the occasion of his first appeal. In any event, even if he had been deprived of effective assistance of counsel in his first appeal, the sole remedy would be the grant of a new appeal. Obviously, the new appeal for purposes of raising the issues not considered in the prior appeal has now taken place.

The defendant raises several issues on this appeal which were not raised by his appellate counsel on the initial appeal.

The defendant's contentions as to his duty to retreat are without merit in light of the fact that, even if he had no duty to retreat, he acted unreasonably in repelling a nonlethal attack by stabbing his aggressor five times.

The defendant's claim of insufficient evidence to support the trial court's verdict is without merit.

The defendant's request for resentencing has no validity for the reason that the allegedly constitutionally infirm convictions were not a material consideration in the length of the sentence and

defendant's claimed request to personally review the presentence report does not appear on the record.

The defendant's claim that he was not given effective assistance of counsel on the occasion of his first appeal is neither valid nor meritorious.

Finally, we adopt the opinion in *People v Oster*, 67 Mich App 490; 241 NW2d 260 (1976), on the questions whether the examining magistrate abused his discretion in binding defendant over to the circuit court for trial on an open charge of murder and whether acquittal was mandated due to unrebutted expert opinion.

Affirmed.