624 N.W.2d 918 (2001)
PEOPLE of the State of Michigan, Plaintiff-Appellant,
v.
Geronimo CANALES, a/k/a Jeronimo Canales, Defendant-Appellee.
No. 118323, COA No. 221452.
Supreme Court of Michigan.
April 27, 2001.
*919 On order of the Court, the application for leave to appeal from the December 12, 2000, decision of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
CORRIGAN, C.J., dissents and states as follows:
I would grant the prosecutor's application for leave to consider the jurisprudentially significant question of the appropriate standards governing the use of deadly force in self-defense where the confrontation arises within the curtilage of a dwelling, but not inside a defendant's dwelling or inhabited outbuildings. This Court has not directly addressed the principles affecting the duty to retreat for 140 years. In Pond v. People, 8 Mich. 150, 173, 1860 WL 2630 (1860), this Court recognized the sanctity of human life as the primary principle underlying the duty to retreat rule, "human life is not to be lightly disregarded, and the law will not permit it to be destroyed unless upon urgent occasion." Pond also recognized that the law does not require a person to retreat from his home, abandoning it and perhaps his family to the mercy of an assailant.
Unfortunately, our Court of Appeals has inconsistently described the term "dwelling." One view, reflected in People v. Godsey, 54 Mich.App. 316, 319-320, 220 N.W.2d 801 (1974), is that the dwelling is limited to the actual enclosed physical structure of a home. The other view, introduced for the first time by the Court of Appeals in its published opinion in this case, extends the definition of dwelling to include areas in the curtilage that are adjacent to, but outside, the home itself.
Because the right to take human life in self-defense is at stake, this Court should consider and resolve the problem. The Court of Appeals here appears to invalidate an entrenched criminal jury instruction on the duty to retreat.[1] While the jury instructions lack the force of law, widespread reliance on those instructions is another factor we should consider in deciding whether an issue is jurisprudentially significant.
In this case, a jury convicted defendant of assault with intent to do great bodily harm less than murder. While on the porch of his house, defendant struck the victim, his son, in the face with a baseball bat. The victim and defendant engaged in a physical confrontation earlier in the day. Following that confrontation, defendant's son left the premises. Later, from inside his home, defendant observed his son return. Defendant then came outside onto the front porch where he picked up a baseball bat. The victim and his wife testified that defendant came down the porch steps and swung the bat at the victim. The victim picked up the gas grill to block defendant's blows with the bat. The victim suffered massive facial bone damage, requiring surgical repairs with metal plates. Defendant and another son testified that the victim had threatened to kill defendant and came at him with a gas grill that he picked up near the porch. The jury plainly credited the victim's testimony.
Defendant admitted that the confrontation on the porch would never have occurred had defendant remained inside his home. Moreover, the defendant could have terminated the confrontation without *920 injury by simply retreating into the sanctuary of his home.
The trial court instructed the jury on self defense and on the duty to retreat. The court refused to give defendant's requested instruction that one has no duty to retreat when one is in his dwelling,[2] ruling that the porch is a public area outside the house.[3] The trial court's instruction that defendant had a duty to retreat did not require defendant to flee from his home.
The dwelling exception has long been recognized in Michigan law:
[H]omicide is not excused unless the slayer does all which is reasonably in his power to avoid the necessity of extreme resistance, by retreating where retreat is safe, or by any other expedient which is attainable. He is bound, if possible, to get out of his adversary's way, and had no right to stand up and resist if he can safely retreat or escape.

* * *
A man is not, however, obliged to retreat if assaulted in his dwelling, but may use such means as are absolutely necessary to repel the assailant from his house, or to prevent his forcible entry, even to the taking of life. But here, as in the other cases, he must not take life if he can otherwise arrest or repel the assailant. [Pond, supra at 176-177.]
The Court of Appeals has relied on this articulation to hold that the dwelling exception does not extend outside the actual physical limits of the home. In Godsey, the defendant left his porch, picked up a baseball bat and struck the victims, who had been throwing chunks of concrete at him while he was on the porch. The Court of Appeals refused to extend the dwelling exception to the yard immediately adjacent to the dwelling. The Court stated that Pond limited the dwelling exception to the actual "physical structure utilized as an abode":
Michigan case law provides no precise definition of "dwelling" for purposes of the no retreat rule. Pond, supra, is frequently cited for the proposition that the term "dwelling" embraces the curtilage of a house and correspondingly extends the area within which one is not obliged to retreat beyond the mere physical structure utilized as an abode. See, for example, 52 A.L.R.2d 1458, Annotation, Homicide: Extent of Premises Which May Be Defended Without Retreat Under Right of Self-Defense, § 2, and 40 Am. Jur. 2d, Homicide, § 168, p. 455, footnote 4. In our judgment, however, such a reading of Pond is unjustifiably expansive. [Godsey, supra at 320, 220 N.W.2d 801.]
In fact, the Godsey Court stated that today's urban/suburban population density compels maintaining the integrity of the dwelling-based rationale for the doctrine:
We read Pond as extending [the dwelling exception] only to inhabited *921 outbuildings located within the curtilage of the home. Indeed, in this day of small city and suburban residential lots, the contrary rulethat a man may utilize deadly force without retreat whenever attacked in the curtilage of his homewould effectively limit the applicability of the prevailing retreat requirement to situations in which the defendant was on another's property. Such a result, to us, is both an unwarranted extension of Michigan law and inconsistent with the high value placed on human life by any enlightened society. Godsey, supra, 54 Mich.App. at 321, 220 N.W.2d 801.[4]
Finally, I question the Court of Appeals use of the home invasion statute for assistance to define "dwelling" for purposes of the dwelling exception. The home invasion statute[5] defines "dwelling" as "a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter" (emphasis added). Without adequate explanation, the Court of Appeals concluded that this statutory definition should be incorporated into the common-law dwelling exception to the duty to retreat rule.[6] The statute does not purport to establish standards for self-defense nor to define the scope of the no-retreat rule. The Court of Appeals in this case presents no compelling rationale for concluding that the legislature intended to define the scope of the 140-year-old common-law duty-to-retreat rule in the home invasion statute.
In this case, the Court of Appeals departed from the Godsey reading of Pond and from the rationale for the dwelling exception arising from the sanctuary provided by the home's enclosed physical structure.
The published Court of Appeals opinion authorizes the use of deadly force in self-defense outside the confines of the home. The authorization to use deadly force is broad and does not include any limitations or standards of conduct. It does not provide any principled rationale for expanded spatial limitations. Thus, its ruling has serious implications for the use of deadly force in densely populated urban areas. It appears to depart from the principled foundation of the dwelling exception and from Pond.
This Court should take a fresh look at the ancient jurisprudence of this Court on this issue.
I would grant leave to consider these significant problems.
NOTES
[1] The standard jury instruction on the dwelling exception provides:

CJI2d 7.17
No Duty to Retreat While in Own Dwelling
If a person [assaulted the defendant in the defendant's own home / forcibly entered the defendant's home], the defendant did not have to try to retreat or get away. Under those circumstances, the defendant could stand [his /her] ground and resist the [attack / intrusion] with as much force as [he / she] honestly and reasonably believed necessary at the time to protect [himself / herself].
[2] The trial court here instructed the jury:

By law, a person must avoid using deadly force if he can safely do so. If the defendant could have safely retreated, but did not do so, you can consider that fact, along with all the other circumstances, when you decide whether he went farther in protecting himself or his son than he should have.
This is the standard jury instruction. CJI2d 7.16 Duty to Retreat to Avoid Using Deadly Force.
[3] The trial court refused to give the dwelling exception instruction, reasoning:

I've looked at [that issue] ... the front porch of a person's home is pretty much of a public area, anybody can walk up on your front porch and knock on your door, and I read that instruction which counsel referred to, and it specifically refers to, I think, being in your house, that is, inside the house, and it refers specifically, among other things to people walking into your house. I don't think being on the front porch qualifies for that instruction.
The trial court's reasoning appears to be consistent with Pond and Godsey, supra.
[4] The standard jury instruction on the dwelling exception confirms that the exception applies only when the defendant is in his own home:

CJI2d 7.17
No Duty to Retreat While in Own Dwelling
If a person [assaulted the defendant in the defendant's own home I forcibly entered the defendant's home ], the defendant did not have to try to retreat or get away. Under those circumstances, the defendant could stand [his / her] ground and resist the [attack / intrusion] with as much force as [he / she] honestly and reasonably believed necessary at the time to protect [himself / herself]. [Emphasis added.]
[5] M.C.L. § 750.110a(1)(a); M.S.A. § 28.305a(1)(a).
[6] The Court of Appeals found "persuasive" that the use note to CJI2d 7.17, "references" the home invasion statute. That use note simply states, without citation of authority, that, "for a statutory definition of `dwelling,' see [the home invasion statute]" (emphasis added). Neither the standard jury instructions nor the commentaries thereto have the force of law. People v. Petrella, 424 Mich. 221, 277, 380 N.W.2d 11.