*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHANTAL LORILY LISTER,

      Defendant-Appellant.

UNPUBLISHED
February 22, 2024

No. 365000
Kent Circuit Court
LC No. 21-000380-FH

Before: HOOD, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant was convicted after a bench trial of assault with a dangerous weapon (felonious assault), MCL 750.82; and of use of a self-defense spray or foam device, MCL 750.224d. Defendant now appeals by right, arguing that because she presented a self-defense claim at trial, there was insufficient evidence to convict her of these crimes. For the reasons set forth in this opinion, we affirm defendant's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an incident in which defendant assaulted Laysha Florien outside a roller-skating rink in Kent County. Defendant and Florien arrived at the Kentwood Fun Spot separately to meet friends. Conversation between the two women inside the roller rink escalated into an argument to the point that security escorted defendant outside the rink. Defendant went to her car, retrieved a cannister of pepper spray, and stood by her car with the door open. Florien left the rink two or three minutes after defendant. As Florien walked to her cousin's car, she heard defendant yelling, noticed that defendant's car was parked next to her cousin's car, and noticed that defendant was standing between her car and her cousin's car. Florien testified that she approached defendant, expecting the two to argue but not expecting a physical altercation. In contrast, defendant testified that Florien walked toward her very quickly and looked angry, and defendant told Florian that she would pepper spray her if she kept walking toward her. Defendant testified that she believed Florien was going to attack her.

When Florien was about five feet from defendant, defendant knocked Florien's glasses off Florien's face. Florien testified that she could not see anything without her glasses. Dahja Nevills,

one of Florien's friends, testified that she picked up Florien's glasses and witnessed defendant "running up on" Florien seconds later. Defendant then pepper sprayed Florien. Florien swung her arm outward and hit defendant's left eye, defendant attempted to defend herself by swinging her left hand and hitting Florien, and then Florien hit defendant again. Florien heard the bystanders in the parking lot comment, "[Defendant] just cut you." Nevills testified that she heard defendant say, "I just stabbed that bitch," referring to Florien, and that defendant "had a knife in one hand and mace in the other."

Defendant denied having a knife and saying anything about cutting Florien. She said that she did not know at the time that Florien had been cut and that, in her mind, she was defending herself from Florien. A security officer prevented Florien from going after defendant, and defendant stepped back from the altercation. Eventually, Florien received stitches for two cuts on her hand and one on her finger. Defendant testified that the cuts were caused by her ring, which broke when defendant hit Florien. Later, on the night of the incident, defendant's activity on social media indicated that she had "sliced" Florien.

The trial court acknowledged that there was conflicting testimony about what went on inside and outside the roller rink, but ultimately it concluded that defendant's ring did not cause Florien's injuries and that defendant had a knife during the altercation. The trial court also found that, because Florien was not armed and defendant could have "gotten in her car and driven away," there was no justification for defendant to use pepper spray. Accordingly, the trial court found that defendant had not acted in self-defense and found her guilty of the charged crimes.

## II. ANALYSIS

Generally, this Court "review[s] a challenge to the sufficiency of the evidence in a bench trial de novo and in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000). "Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). When reviewing a sufficiency claim on appeal, this Court "must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the . . . verdict." *Id*.

Findings of fact are reviewed for clear error. *People v Pennington*, 323 Mich App 452, 464 n 7; 917 NW2d 720 (2018). The trial court's findings of fact are clearly erroneous only if this Court is "left with a definite and firm conviction that the trial court made a mistake." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted).

In a criminal case, the prosecution must introduce sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992). Sufficiency of evidence is measured by "whether the evidence, taken as a whole, justifies submitting the case to the trier of fact or requires judgment as a matter of law." *People v Clark*, 172 Mich App 1, 6; 432 NW2d 173 (1988). The prosecution is not required to negate "every reasonable theory consistent with innocence" as long as the elements of the offense

are proven beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Self-defense is an applicable defense to murder, manslaughter, and other crimes in which the defendant took reasonable steps to defend herself from an unlawful attack. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). The defendant must produce evidence that: (1) she honestly and reasonably believed that she was in danger; (2) the danger feared was death or serious bodily harm; (3) the action taken was immediately necessary at the time; and (4) the defendant was not the initial aggressor. *People v Riddle*, 467 Mich 116, 126-127; 649 NW2d 30 (2002).

Additionally, "[t]he necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so . . . by applying nondeadly force or *by utilizing an obvious and safe avenue of retreat*." *Id*. at 119 (emphasis added). In other words, the act of self-defense must be, "under the particular circumstances, the only available avenue by which the defendant could escape from a reasonably perceived threat of death or great bodily harm." *People v Oster*, 97 Mich App 122, 133; 294 NW2d 253 (1980) (quotation marks and citation omitted). Once the defendant satisfies this burden, the prosecution then bears the burden of "disproving the common law defense of self-defense beyond a reasonable doubt." *Reese*, 491 Mich at 155 (quotation marks and citation omitted).

Here, the trial court considered the defense of self-defense, which was a proper defense to both defendant's felonious-assault charge and the use of a self-defense spray or foam device charge. See *Dupree*, 486 Mich at 707. The trial court analyzed the evidence presented by both sides in light of the existing standards, and concluded defendant did not act in self-defense.

Defendant puts forward several arguments in her challenge to the trial court's findings and conclusions on self-defense. First, defendant argues that because Florien was significantly taller than her and was approaching her in the parking lot while walking "very fast" with an angry expression, defendant felt scared and believed that she was going to be attacked. However, as noted in the trial court's conclusion at trial, the record shows that defendant and Florien were engaged in a verbal argument inside the roller-skating rink, and once security intervened, defendant had the option to go outside and leave the premises in her vehicle. Instead of doing so, defendant walked to her vehicle, armed herself with pepper spray, and continued to stand outside of her vehicle. Florien was inside the rink for several minutes after defendant exited, giving defendant ample opportunity to leave the premises if she honestly and reasonably feared a physical altercation.

Second, defendant argues that she did not have a duty to retreat, based on the Self-Defense Act, MCL 780.971 *et seq*., which modified the traditional common-law duty to retreat by stating that there is no duty to retreat in any place where an individual has a legal right to be, so long as that individual is not committing a crime. See MCL 780.972(2). However, MCL 780.971(2) states that this exception only applies if the defendant "honestly and reasonably believes that the use of that force is *necessary* to defend himself or herself or another individual from the imminent unlawful use of force by another individual" (emphasis added), and the trial court's finding that it was not necessary to act as defendant did was supported by the evidence.

It is true that "[a]ctual necessity is not the test for self-defense; where circumstances present a person with reasonable cause to believe he is in danger he may respond, even if his belief is later shown to have been a mistaken one." *People v Shelton*, 64 Mich App 154, 156; 235 NW2d 93 (1975). Defendant argues that she did not know for a fact that Florien was not armed. However, as noted earlier, defendant had little, to no, reason to think that Florien was armed because defendant knew that Florien went through a metal detector before entering the rink, and Florien walked directly from the rink to the parking lot. As stated earlier, the act of self-defense must be, "under the particular circumstances, the only available avenue by which the defendant could escape from a reasonably perceived threat of death or great bodily harm." *Oster*, 97 Mich App at 134 (quotation marks and citation omitted). Therefore, the trial court's conclusion that there was no justification for defendant to use force was supported by sufficient evidence.[1]

Furthermore, even though Florien approached defendant first, defendant was the clear initial aggressor of the actual physical altercation. See *Riddle*, 467 Mich at 126-127 (indicating that a defendant asserting self-defense cannot be the initial aggressor). Defendant was the first one to knock Florien's glasses off of her face and mace or pepper spray Florien when Florien posed little to no physical threat. After the incident, defendant posted several statements on social media as well. The trial court addressed these statements during trial:

> Defendant posted three times on Facebook after the altercation and I'm going to indicate right now I find the Facebook pages or—or messages to be very damaging to the defense. In which they read as brags. Captain save-a-hoe got sliced. You want to try me again? Stop fucking playing with me. All accompanied by some sort of laughing or smiling emojis.

These statements are a clear indication that defendant intended to initiate the fight and was aware of what she was getting into.

Defendant attempts to compare this case to *People v Hoskins*, 403 Mich 95; 267 NW2d 417 (1978), in which the Supreme Court held that evidence was sufficient to support the defendant's self-defense theory. But the facts in *Hoskins* are completely different from the facts

---

[1] Defendant also argues that the trial court "failed to adhere to the requirement that it consider the evidence in the light most favorable to" defendant. However, as stated earlier, this Court "review[s] a challenge to the sufficiency of the evidence in a bench trial de novo and in a light most favorable to the prosecution . . . ." *Sherman-Huffman*, 241 Mich App at 265. Furthermore, during trial, the trial court stated that in making its decision, the trial court considered "all the circumstances as they appeared to the defendant at the time," and fairly acknowledged that "there is some testimony about the victim in the case at times moving towards the defendant in the case" and vice versa. Defendant argues that in considering both sides of testimony, the trial court failed to consider that the "threat" originated from Florien to defendant and that Florien approached defendant first. However, even considering Florien's approach, the amount of force used was unnecessary and disproportionate to the situation. The trial court stated that overall there was no "particularly persuasive reason to instead decide to engage in something in which people could be harmed" when defendant had the option to retreat.

here, as the record shows that Florien never verbally threatened to physically harm defendant. In fact, it was defendant who verbally threatened to mace or pepper spray Florien.

The trial court did not clearly err in concluding that defendant failed to act in self-defense. Accordingly, defendant is not entitled to reversal of her convictions.

Affirmed.

/s/ Noah P. Hood
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado