PEOPLE v TAYLOR

Docket No. 77-4518. Submitted April 3, 1979, at Detroit.—Decided
        November 5, 1979. Leave to appeal applied for.

Elmer Taylor was convicted in Recorder's Court of Detroit, Susan
        D. Borman, J., of having incited, induced or exhorted one
        Lawrence Blankenship to burn a dwelling in the City of De-
        troit. The defendant appeals, alleging that the search warrant
        authorizing the recording of a telephone conversation between
        the defendant and Blankenship was defective because it failed
        to meet Fourth Amendment requirements and that the trial
        court erred in denying the defendant's motion to suppress.
        *Held:*

    The warrant failed to comply with the constitutional and
        statutory requirements that there be a description of the
        "thing" to be seized and allowed the recording of any telephone
        conversation between Blankenship and the defendant that
        constituted evidence of a crime. Since no particular crime was
        designated by the warrant, the police were given virtually
        unlimited discretion as to what could be recorded since numer-
        ous conversations could constitute evidence of some crime. The
        trial court erred in denying the defendant's motion to suppress.
        Reversed.

1. Searches and Seizures — Conversations — Participant Moni-
        toring — Third-Party Transmissions — Participant Record-
        ings — Search Warrants.

    Participant monitoring through the use of an electronic device by
        a participant in a conversation which transmits the exchange
        to a third party and the recording of a conversation by a
        participant in the conversation on tape instead of transmitting
        it are both searches and seizures which must comply with
        search warrant requirements.

2. Searches and Seizures — Search Warrants — Conversations
        — Participant Monitoring.

    A search warrant for the recording by a police informant of a
        conversation between the informant and another party is defi-

References for Points in Headnotes
[1] 68 Am Jur 2d, Searches and Seizures §§ 24, 46.
[2, 3] 68 Am Jur 2d, Searches and Seizures §§ 73, 81, 82, 106.

cient where the warrant does not sufficiently describe the conversation or conversations to be recorded.

3. SEARCHES AND SEIZURES — WARRANTS — DESCRIPTION OF ITEMS TO BE SEIZED.

Search warrants may not authorize general searches, nor may they permit police officers to exercise undirected discretion in determining what to seize; the Fourth Amendment requires warrants to particularly describe the items to be seized (US Const, Am IV).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Robert E. Edick,* Assistant Prosecuting Attorney, for the people.

*Burgess & Burgess, P.C.,* for defendant on appeal.

Before: T. M. BURNS, P.J., and M. F. CAVANAGH and MACKENZIE, JJ.

MACKENZIE, J. Defendant Elmer Taylor was charged with having incited, induced, or exhorted one Lawrence Blankenship to burn a dwelling in the City of Detroit, said burning being likely to endanger the life of other persons, contrary to MCL 750.157b; 750.72; MSA 28.354(2), 28.267. A jury trial was held in Detroit Recorder's Court. Prior to the closing arguments and the jury charge, the information was amended deleting the phrase "said burning being likely to endanger the life of other persons". Defendant was convicted of the charge as amended. He was sentenced to a term of 2 to 20 years, and appeals as of right.

Lawrence Blankenship testified that he had known defendant for eight or nine years, and that in July, 1976, he and defendant had a conversation at defendant's home. They discussed defendant's neighborhood, and defendant noted that the area was blighted by a certain family, whose members

were shooting out windows, arguing, slandering defendant's wife, and destroying people's property. Defendant said it would not be a bad idea if the family's house burned down, and that it would be worth a couple of hundred dollars to him to have it set on fire. He suggested that the house would not be hard to burn; it could be done by throwing a couple of small gas bombs over there.

A few days later, Blankenship reported the conversation to the police. At the request of the police and after procurement of a search warrant, Blankenship telephoned defendant while in the presence of Sergeant Sanford. The telephone conversation was recorded, and Blankenship afterward verified that the tape and the transcript accurately reflected his conversation with defendant. The transcript revealed that in the course of the conversation, defendant stated, " 'Don't never say nothing to put no heat on me, or nothing will you, * * * Don't don't ever say nothing about me talking to you about a lot of pressure on me, okay?' ". The jury was given a transcript of the taped telephone conversation, and was permitted to listen to the tape.

Defendant testified that he did not intend or urge Blankenship to burn a dwelling, or to have any words to this effect taken seriously.

Defendant, citing *Berger v New York,* 388 US 41; 87 S Ct 1873; 18 L Ed 2d 1040 (1967), contends that the warrant authorizing the recording of the telephone conversation was defective under the Federal Constitution. In *Berger v New York, supra,* the Supreme Court struck down a New York wiretap statute because it failed to meet Fourth Amendment requirements. The statute was held defective because it authorized eavesdropping without requiring belief that a particular offense

has been or is being committed; without requiring that the conversations sought be particularly described; without placing a termination date on the eavesdrop; and without requiring notice or a showing of special facts sufficient to dispense with the notice requirement.

Defendant points out that the search warrant issued in the instant case did not describe with particularity the types of conversations to be monitored; did not state that there is probable cause to believe that a particular offense has been or is being committed by defendant; did not limit the number of telephone conversations to be monitored; and did not contain a termination date on the monitoring.

Initially, we note that Federal constitutional law recognizes a distinction between third-party monitoring and participant monitoring. Third-party monitoring involves police monitoring of a conversation without the consent or knowledge of either participant, whereas participant monitoring involves monitoring with the consent of one of the parties to the conversation.

In *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), the United States Supreme Court held that when police engage in third-party monitoring, a search occurs for Fourth Amendment purposes, and that police must procure a search warrant prior to eavesdropping. In *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971), however, a four-justice plurality held that participant monitoring is not a search.

In *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), the Michigan Supreme Court held that participant monitoring constituted a search and seizure under the Michigan Constitution, Const

1963, art 1, § 11, and, therefore, was permissible only if a valid search warrant was issued. *Beavers* involved a situation where the defendant made incriminating statements to a radio transmitter, enabling police located nearby to overhear the conversation.

In the instant case, however, the record indicates that the police did not overhear defendant's remarks as they were being made. Rather, an officer was present with Blankenship while Blankenship was conversing with defendant. The conversation was recorded and, upon completion, the recording was played back by the officer and Blankenship.

In *Beavers,* the Supreme Court specifically limited its holding to situations where the conversation was being heard by a third party as it was taking place:

"Where the phrase 'participant monitoring' appears, we specifically refer to the use of an electronic device *by a participant* of a conversation which transmits the exchange to a third party. We do not address those situations which include a participant himself *recording* the conversation or the use of an electronic device by a *third party only* to eavesdrop upon a conversation between two parties, one of whom is cooperating with the authorities." *People v Beavers, supra,* at 562-563, fn 2. (Emphasis in original.)

In *People v Livingston,* 64 Mich App 247; 236 NW2d 63 (1975), this Court extended the *Beavers* rationale to include participant recording. See also *People v Hall,* 88 Mich App 324, 328; 276 NW2d 897 (1979), where this Court stated:

"The fact that a recording of a conversation could be permanently stored and then produced long after the participants or their monitors forgot about the conver-

sation makes participant recording just as intrusive of privacy as participant monitoring, and subject to the same restrictions on its use."

The validity of the search warrant in the instant case must be analyzed in terms of Michigan search and seizure law. Const 1963, art 1, § 11 provides:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. *No warrant to search any place or to seize any person or things shall issue without describing them,* nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state." (Emphasis supplied.)

The general statutory provision covering search warrants, MCL § 780.654; MSA § 28.1259(4), states in part:

"Each warrant shall designate and describe the house or building or other location or place to be searched and the property or thing to be seized. The warrant shall also state the grounds or the probable or reasonable cause for its issuance, or in lieu thereof, a copy of the affidavit may be attached thereto."

Thus, to pass muster, the search warrant at issue in the instant case must have sufficiently described the conversation or conversations to be recorded. We find the instant warrant deficient in this respect.

The instant warrant authorized interception or monitoring of conversations that occurred "during a call initiated by Larry Blankenship from telephone number 313-224-2895 to Elmer Taylor, a/k/

a 'Tucker', at telephone number 313-554-3460". The warrant stated that its purpose was to authorize the tape recording and monitoring of telephone conversations between Larry Blankenship and Elmer Taylor, a/k/a "Tucker", and the conversation to be seized constituted "evidence of a crime".

The instant authorization fails to comply with the constitutional and statutory requirements that there be a description of the "thing" to be seized. The warrant permits recording of any conversation that constitutes evidence of a crime. Since no particular crime is designated, the police are given virtually unlimited discretion as to what may be recorded since numerous conversations could constitute evidence of some crime. However, as the U.S. Supreme Court noted in *Berger v New York, supra,* at 56:

"The need for particularity and evidence of reliability in the showing required when judicial authorization of a search is sought is especially great in the case of eavesdropping. By its very nature eavesdropping involves an intrusion on privacy that is broad in scope."

The importance of particularity of description was recognized in *United States v Gardner,* 537 F2d 861 (CA 6, 1976). The Court upheld a ruling by the U.S. District Court for the Eastern District of Michigan granting a motion to suppress a sawed-off shotgun seized pursuant to a search warrant. Although probable cause existed to search solely for a .38-caliber pistol, the warrant authorized seizure of "all firearms and ammunition". The Court stated:

"The Fourth Amendment requires warrants to partic-

ularly describe the items to be seized. Warrants may not authorize general searches, nor may they permit police officers to exercise undirected discretion in determiming what to seize. *Berger v New York,* 388 US 41, 58, 87 S Ct 1873, 18 L Ed 2d 1040 (1967); *United States v Sanchez,* 509 F2d 886, 889 (6th Cir, 1975)." *United States v Gardner, supra,* at 862.

Although *Berger* and *Gardner* were decided on the basis of Federal constitutional law, the same requirement of particularity of description exists under Michigan search and seizure law. The reasons behind this and the other warrant requirements were considered by the Michigan Supreme Court in *People v Beavers, supra,* at 566:

"The warrant requirement is not a burdensome formality designed to protect those who would engage in illegal activity, but, rather, a procedure which guarantees a measure of privacy and personal security to *all* citizens. The interests of both society and the individual should not rest upon the exercise of the unerring judgment and self-restraint of law enforcement officials. Our laws must ensure that the ordinary, law-abiding citizen may continue to engage in private discourse, free to speak with the uninhibited spontaneity that is characteristic of our democratic society."

We thus conclude that the lower court erred in denying defendant's motion to suppress. Because we are unable to say that admission of the evidence was harmless, we must reverse. Our disposition renders unnecessary a discussion of the other issues raised by defendant.

Reversed.