PEOPLE v D'AVANZO

Docket No. 62862. Submitted November 3, 1982, at Grand Rapids.— Decided April 20, 1983.

Roberto D'Avanzo was charged in Kalamazoo Circuit Court with murder. Defendant moved to suppress certain statements he had made to the police in the weeks following the murder. The court, Donald T. Anderson, J., conducted a *Walker* hearing, after which it ordered that four of five statements be suppressed. The people appeal by leave granted. *Held:*

1. The trial court clearly erred in ruling that the fifth of the five statements need not be suppressed. Defendant should have been warned of his *Miranda* rights prior to the taking of the statement. He was not so warned, and the trial court's ruling that this statement was admissible is reversed.

2. The other four statements were inadmissible since they were obtained through a violation of defendant's *Miranda* rights. The trial court did not err in suppressing those four statements.

3. The trial court's findings that defendant's confessions were involuntary, independent of any *Miranda* violations, were not clearly erroneous and will not be disturbed on appeal.

Reversed in part, affirmed in part, and remanded for further proceedings.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21A Am Jur 2d, Criminal Law § 791.

29 Am Jur 2d, Evidence § 555.

Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

[2] 21A Am Jur 2d, Criminal Law § 793.

29 Am Jur 2d, Evidence § 555.

What constitutes "custodial interrogation" within rule of Miranda v Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

[3] 29 Am Jur 2d, Evidence §§ 555 *et seq.,* 614, 640.

[4] 29 Am Jur 2d, Evidence §§ 582, 584, 587.

Admissibility of pretrial confession in criminal case—Supreme Court cases. 1 L Ed 2d 1735; 4 L Ed 2d 1833; 12 L Ed 2d 1340; 16 L Ed 2d 1294; 22 L Ed 2d 872.

Constitutional aspects of procedure for determining voluntariness of pretrial confession. 1 ALR3d 1251.

1. CRIMINAL LAW — *MIRANDA* WARNINGS — SUPPRESSION OF STATE-
   MENTS.

   The deciding factor for determining in each case when *Miranda*
   warnings must be given before questioning is an examination
   of the specificity of the investigation, *i.e.,* whether the investi-
   gation has focused on one suspect; where *Miranda* warnings
   must be given, inculpatory statements made without the benefit
   of such warnings must be suppressed.

2. CRIMINAL LAW — INTERROGATION.

   Words or acts on the part of police which they should know are
   reasonably likely to elicit an incriminating response from a
   suspect may be considered acts of interrogation.

3. CRIMINAL LAW — EVIDENCE — CONFESSION — FRUIT OF POISONOUS
   TREE.

   A statement by a defendant which is secured after a giving of the
   *Miranda* warnings may nevertheless be inadmissible into evi-
   dence; if such statement is causally connected to a prior state-
   ment by the defendant which was not prefaced with the neces-
   sary warning, the subsequent statement could be the fruit of
   the poisonous tree; the test to be applied is whether, granting
   establishment of the primary illegality, the evidence to which
   objection is made has been obtained by exploitation of that
   illegality or instead by means sufficiently distinguishable to be
   purged of the primary taint.

4. APPEAL — *WALKER* HEARING.

   An appellate court may not disturb a trial court's finding at a
   *Walker* hearing that a defendant's confession was involuntary
   unless it is clearly erroneous.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *James J. Gregart,* Prose-
cuting Attorney, and *Richard A. Santoni,* Assis-
tant Prosecuting Attorney, Appellate Division, for
the people.

*Frederick A. Milton,* for defendant.

Before: MACKENZIE, P.J., and R. M. MAHER and
C. W. SIMON, JR.,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. On October 15, 1980, Patricia Lang was murdered in Kalamazoo. Police investigating the crime quickly sought out defendant, an inmate at the Ionia State Reformatory and former boyfriend of Lang. Over the next nine weeks, defendant had many conversations with law enforcement personnel and, on five occasions, made statements tying him to the killing. Learning that the prosecution intended to introduce these statements into evidence at defendant's trial for Lang's murder, the defendant moved for their suppression. The trial court conducted a *Walker*[1] hearing, and after listening to the testimony of 17 witnesses, it ordered four of the five statements suppressed. The people now appeal by leave granted from that order.

The people argue four issues on appeal. Before we turn to their claims, however, we address an issue raised by neither party. The question should have been presented by defendant on a cross-appeal. Although "[o]rdinarily no point will be considered which is not set forth in or necessarily suggested by the Statement of Questions involved", GCR 1963, 813.1, the rule is not always followed, see *Schlientz v Schlientz,* 329 Mich 53; 45 NW2d 183 (1950); *People v Martin,* 176 Mich 381; 142 NW 592 (1913). We decide this issue, not raised by defendant, because our failure to do so would result in a manifest injustice.

The question is whether the single statement that survived the suppression motion should have been excluded from evidence. The trial court's ruling denying defendant's motion to suppress this statement was based on a finding of fact, that is, we conclude clearly erroneous. Therefore, we reverse.

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

The statement in question was made to Ora Roberts, an inspector at the Ionia State Reformatory. The events leading up to and the circumstances surrounding defendant's conversation with Roberts may be stated briefly. Shortly after defendant was identified as a former boyfriend of Lang, Robert Slater, a police officer investigating the murder, telephoned defendant to elicit information useful to his inquiry. During their conversation, defendant told Slater that he had some letters from Lang and agreed to relinquish half of them to Slater. Subsequently, Slater travelled to Ionia. There he met with Ora Roberts and James Purkey, a detective sergeant with the Michigan State Police who maintained an office at Ionia. Slater and Purkey told Roberts that defendant was a suspect in the murder and asked Roberts to "shake down" defendant's living quarters to obtain Lang's letters. Apparently, defendant had refused to release the letters when he learned that Slater had questioned his mother and other relatives about Lang's death. Later that day, defendant's quarters were searched and the letters secured.

That same day defendant came to see Roberts. He complained that Slater and Purkey were harrassing him and implored Roberts to get them "off my back". At one point in their conversation, Roberts asked defendant whether he had anything to do with Lang's murder. Defendant replied, "The only way I could be involved would be as a conspirator" or words to that effect.

It is undisputed that Roberts, at no point during their talk, advised defendant of his *Miranda*[2] rights. Where *Miranda* warnings must be given, inculpatory statements made without the benefit

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

of such warnings must be suppressed. *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975). To determine when *Miranda* warnings must be given "the 'deciding factor, in each case, is determined by examining the specificity of the investigation, *i.e.,* whether the investigation has focused on one suspect.' " *People v Reed, supra,* p 357; *People v Brannan,* 406 Mich 104, 118; 276 NW2d 14 (1979).

The trial court apparently found that defendant's conversation with Roberts occurred before Slater and Purkey informed Roberts that defendant was a suspect. Accordingly, the trial court concluded that Roberts need not have advised defendant of his *Miranda* rights. The record clearly establishes, however, the reverse sequence of events. Defendant originally came to see Roberts because Slater and Purkey were pressuring him, especially about Lang's letters. When defendant said he would not turn over the letters, Roberts told him that at that very moment his domicile was being shaken down and the letters removed. This remark fixes in time Roberts' conversation with defendant in relation to Roberts' talk with Purkey and Slater because the shakedown occurred after Slater and Purkey had told Roberts that defendant was a suspect and, in fact, was done at their request. Thus, when Roberts asked defendant about his involvement in the murder, the investigation had focused on defendant and Roberts, aware of this fact, should have advised defendant of his *Miranda* rights. We conclude that defendant's inculpatory response to Roberts' question should have been suppressed. The trial court's ruling to the contrary is reversed.

We turn now to the people's four claims of error. The people argue that the trial court erred in suppressing two statements defendant made to

Purkey on or during the few days following October 19, 1980. Purkey testified at the suppression hearing that he did not consider defendant a suspect when defendant incriminated himself. Defense counsel, however, impeached Purkey with his assertion, made during his testimony at the preliminary examination, that he considered defendant a suspect on October 19, 1980. Choosing to believe Purkey's earlier version, the trial court concluded that the investigation had focused on defendant when he incriminated himself in response to Purkey's questions. This finding was not clearly erroneous. Nor will we disturb the trial court's findings that defendant made incriminating remarks without the benefit of *Miranda* warnings. These findings were not clearly erroneous. Consequently, we affirm the trial court's order suppressing these statements.

The people next argue that the trial court erred in suppressing the confession given over the telephone to Lanny Wilde, the deputy chief of the Western Michigan University police force, on December 24, 1980, at 1 p.m. and a second confession given to Purkey one hour later. There can be no doubt that by this time the investigation had centered on defendant. Wilde testified that defendant was a suspect when defendant called him on December 24. Wilde, however, did not advise defendant of his *Miranda* rights. Moreover, we reject the people's argument that defendant's confession was not in response to an "interrogation". In *Rhode Island v Innis,* 446 US 291; 100 S Ct 1682; 64 L Ed 2d 297 (1980), the Supreme Court held that "interrogation" includes words or acts on the part of the police which they should know are reasonably likely to elicit an incriminating response from the suspect. Wilde knew that defen-

dant was going to make a statement and explicitly encouraged him to do so. Thus, defendant's response was inadmissible.

When defendant confessed to Purkey, one hour after he talked to Wilde, defendant had been advised of his *Miranda* rights. Defendant argues that the second confession is inadmissible on the basis of the fruit of the poisonous tree doctrine even though the second confession was made after *Miranda* was complied with. Whether the *Miranda* warnings purged the taint of the first illegally obtained confession depends on the causal connection between the two confessions. *People v Grevious,* 119 Mich App 403, 409; 327 NW2d 72 (1982). The test to be applied is:

" 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' *Wong Sun v United States,* 371 US 471, 488; 83 S Ct 407, 417; 9 L Ed 2d 441, 455 (1963), quoting from Maguire, Evidence of Guilt (1959), 221." *People v Merlo,* 23 Mich App 694, 699; 179 NW2d 222 (1970).

After Wilde got off the telephone with defendant he called Purkey and instructed him to take a written confession from defendant. Thus, the second confession was a product of the first. The trial court did not err in suppressing it.

Finally, the people argue that the trial court erred in finding that, independent of any *Miranda* violations, the confessions given to Wilde and Purkey were involuntary. An appellate court may not disturb a trial court's finding at a *Walker* hearing that a defendant's confession was involuntary unless it is clearly erroneous. *People v Dean,* 110

Mich App 751; 313 NW2d 100 (1981); *People v Emanuel,* 98 Mich App 163; 295 NW2d 875 (1980). There was considerable testimony from reputable witnesses, such as defendant's minister, friend, and prison counselor, that defendant felt himself extremely pressured by the authorities. There was also considerable testimony that defendant was continually interrogated, harrassed, and subjected to shakedowns in late 1980. In light of this evidence we cannot conclude that the trial court's findings that defendant's confessions were involuntary were clearly erroneous.

Reversed in part, affirmed in part, and remanded for further proceedings not inconsistent with this opinion.