PEOPLE v FISHER

Docket No. 91816. Submitted October 20, 1987, at Lansing. Decided March 7, 1988.

Richard E. Fisher was tried in the Eaton Circuit Court on an open charge of murder and convicted of second-degree murder, Richard M. Shuster, J. Defendant appealed, alleging error in the admission of testimony concerning statements made by him in a prearrest telephone conversation, in the admission of testimony concerning incriminating statements made by defendant to the police without having been given *Miranda* warnings, in instructing the jury on self-defense but omitting the no-retreat in one's home instruction, in instructing the jury to deliberate on first-degree murder before deliberating on second-degree murder, in denying the jury's request for a dictionary without inquiry or attempting to clarify the instructions, and in departing from the sentencing guidelines to the extent that it should shock the conscience of the Court.

The Court of Appeals *held:*

1. The test for determining whether governmental activity with respect to a challenged search infringed upon a protected interest is whether the defendant had a reasonable expectation of privacy in the object of the search: i.e., whether the defendant manifested a subjective expectation of privacy, and whether the expectation was one that society is prepared to recognize as reasonable. The phone call in question was made from an unenclosed pole-type pay phone, people were nearby defendant when he made the call, and defendant was told that a police detective was with the person called and defendant even spoke with the detective. The court's holding that defendant did not have a reasonable expectation of privacy was not clearly erroneous.

2. The prearrest telephone conversation with the police detec-

REFERENCES

Am Jur 2d, Criminal Law §§ 525 et *seq.,* 791-797.

Am Jur 2d, Homicide §§ 291, 485, 519.

Am Jur 2d, Searches and Seizures §§ 2, 4, 486.

Comment Note.— Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

tive did not require the giving of *Miranda* warnings since defendant was not in custody. Evidence of the other statements was admissible even though *Miranda* warnings were not given prior to their utterance since the statements were not made in response to interrogation or under circumstances known to the police to be likely to produce incriminating statements.

3. The trial court did not err in omitting the no-retreat from one's home instruction in conjunction with its instructions on self-defense. The incident occurred in a home defendant had an ownership interest in although he did not reside there. The rule that a person has no duty to retreat from an assault in his home applies to the location where the person resides, not to any dwelling in which the person has an ownership interest.

4. The jury in a trial on an open charge of murder was properly instructed to deliberate on first-degree murder before deliberating on second-degree murder.

5. The decision to provide additional instructions at the request of the jury is a matter within the discretion of the trial court. The court did not abuse its discretion.

6. The Court of Appeals could not tell from the record whether the sentence shocked its conscience or not.

Remanded for resentencing.

1. APPEAL — SUPPRESSION OF EVIDENCE — CLEAR ERROR.

A trial court's ruling on a motion to suppress evidence will not be reversed unless it is clearly erroneous; a ruling is clearly erroneous where the reviewing court is firmly convinced that a mistake has been made.

2. SEARCHES AND SEIZURES — REASONABLE EXPECTATION OF PRIVACY.

The test for determining whether governmental activity with respect to a challenged search infringed upon a protected interest is whether the defendant had a reasonable expectation of privacy in the object of the search: i.e., whether the defendant manifested a subjective expectation of privacy, and whether the expectation was one that society is prepared to recognize as reasonable (US Const, Am IV; Const 1963, art 1, § 11).

3. CRIMINAL LAW — CONSTITUTIONAL LAW — *MIRANDA* WARNINGS.

Warnings required under *Miranda v Arizona,* 384 US 436 (1966), must be given prior to questioning when a person is in custody or otherwise deprived of freedom of action in any significant way, not at the time a person becomes the focus of an investigation.

4. CRIMINAL LAW — *MIRANDA* WARNINGS — INTERROGATION.

Warnings required under *Miranda v Arizona*, 384 US 436 (1966), must be given in instances in which a defendant is subjected to custodial interrogation; interrogation is any practice that the police know or reasonably should know is likely to invoke an incriminating response.

5. CRIMINAL LAW — *MIRANDA* WARNINGS — INTERROGATION.

The act by the police of placing an arrest warrant in front of a defendant for his inspection is not an interrogation requiring the giving of warnings required under *Miranda v Arizona*, 384 US 436 (1966), and any incriminating statements made by the defendant in response are admissible.

6. HOMICIDE — SELF-DEFENSE — NO-RETREAT RULE.

The rule that a person has no duty to retreat from an assault in his home applies to the location where the person resides, not to any dwelling in which the person has an ownership interest.

7. HOMICIDE — OPEN MURDER — JURY INSTRUCTIONS.

A jury in a trial on an open charge of murder is properly instructed to deliberate on first-degree murder before deliberating on second-degree murder (CJI 3:1:15A).

8. CRIMINAL LAW — JURY INSTRUCTIONS — SUPPLEMENTAL INSTRUCTIONS.

The decision to provide additional instructions at the request of the jury is a matter within the discretion of the trial court.

9. CRIMINAL LAW — SENTENCING GUIDELINES.

Reasons for departure from the recommended sentencing guidelines must be articulated by a trial court at the time of sentencing on the record and placed on the sentencing information report.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *G. Michael Hocking,* Prosecuting Attorney, and *K. Davison Hunter,* Assistant Prosecuting Attorney, for the people.

*Milton J. Marovich, P.C* (by *Milton J. Marovich*), for defendant on appeal.

Before: M. J. KELLY, P.J., and DOCTOROFF and J. T. CORDEN,* JJ.

DOCTOROFF, J. Defendant was convicted by a jury of second-degree murder, MCL 750.317; MSA 28.549, for the knifing death of William Tappert that occurred at the home of defendant's estranged wife, Mary Fisher. He was sentenced to from forty to sixty years imprisonment. He appeals as of right, raising six issues. We affirm defendant's conviction, but remand for resentencing.

I

Defendant's first claim of error is that the trial court erred by denying his motion to suppress certain statements that he made during a prearrest telephone conversation on the basis that they were the product of an illegal search and seizure in violation of Const 1963, art 1, § 11.

At the suppression hearing, Detective Robert Kellogg testified that at approximately 11:00 P.M. on the evening of the knifing, he arrived at Mary Fisher's residence. Approximately five minutes later, the telephone rang and Mary Fisher told the caller that she could not talk. When the telephone rang a second time, Fisher indicated to Detective Kellogg that defendant was the caller. Detective Kellogg placed his ear to the receiver and listened as defendant spoke with Fisher. After approximately two minutes, Detective Kellogg advised Fisher to tell defendant that he was present and wanted to speak to him, whereupon defendant spoke with Detective Kellogg for approximately two to three minutes. Defendant inquired about William Tappert. Defendant was advised that Tappert was O.K. and to turn himself in.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant asked to speak to Fisher again. Kellogg listened to the entire conversation, and the telephone changed hands between Fisher and Kellogg approximately four times during the phone call, which lasted approximately fifteen minutes.

Phillip Harris testified that on the night of the knifing he, his brother, Eric, and defendant walked across the street from his apartment to an unenclosed pole-type pay phone in a gas station. Eric placed the call to Fisher for defendant. As defendant conversed, Phillip stood about two feet away and overheard what defendant was saying. Eric stood approximately one foot away from defendant.

Detective Kellogg was recalled and testified to the statements defendant made during the conversation.

After reviewing the applicable case law, the trial court denied defendant's motion to suppress on the ground that defendant had no reasonable expectation of privacy in the telephone call because of the presence of the Harris brothers within hearing distance of him and because defendant had been advised that Detective Kellogg was present with Mary Fisher and, in fact, had spoken with him on at least one occasion. The trial court also ruled in the alternative that exigent circumstances were present.

A trial court's ruling on a motion to suppress evidence will stand undisturbed on appeal unless clearly erroneous. *People v Kalchick,* 160 Mich App 40, 47; 407 NW2d 627 (1987). If upon review of the record the appellate court does not possess a definite and firm conviction that the trial court made a mistake, it must affirm. *People v Burrell,* 417 Mich 439, 449; 339 NW2d 403 (1983).

The Fourth Amendment of the United States Constitution provides that searches conducted

without a warrant, subject to certain well-recognized exceptions, are per se unreasonable. *People v Nash,* 418 Mich 196, 204; 341 NW2d 439 (1983). However, not all governmental intrusions involve searches within the meaning of the Fourth Amendment. *Id.* Before invoking the general rule, it must first be determined whether a search has occurred.

The test for determining whether governmental activity infringes upon a protected interest is whether the defendant exhibited an actual (subjective) expectation of privacy and whether the expectation is one that society will recognize as "reasonable." See *People v Catania,* 427 Mich 447, 457; 398 NW2d 343 (1986). In making the privacy determination, a court is to scrutinize the totality of circumstances surrounding the alleged intrusion. *Nash, supra,* p 205. The "reasonable expectation of privacy" test has been adopted for defining the scope of Const 1963, art 1, § 11, which similarly prohibits unreasonable searches by the government. See *People v Smith,* 420 Mich 1, 25-26; 360 NW2d 841 (1984).

In support of his argument that his statements were the subject of an illegal search and seizure, defendant relies principally on *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), cert den 423 US 878; 96 S Ct 152; 46 L Ed 2d 111 (1975). In *Beavers,* the defendant had a conversation in his own home with a police informant who was wearing an electronic transmitter which enabled the police to listen to the conversation. The police conducted this electronic surveillance without first obtaining a warrant. The Supreme Court, referring to this arrangement as "participant monitoring," held that the Michigan Constitution requires police to obtain a search warrant prior to monitoring a conversation even with the consent of one of the

participants. The Court noted a distinction between assuming the risks that the participant in the conversation would repeat it to others and simultaneous monitoring of a conversation by an unknown party. *Id.,* p 562. While defendant's confidence in the disguised police informant who instantaneously transmits a conversation to law enforcement authorities may be misplaced, the Supreme Court held that this did not deprive the conversation of its private nature. *Id.,* p 564.

This Court has extended the *Beavers* search warrant requirement to situations where a participant records a telephone conversation. See *People v Artuso,* 100 Mich App 396, 400; 298 NW2d 746 (1980), lv den 411 Mich 870 (1981), cert den 454 US 877; 102 S Ct 357; 70 L Ed 2d 187 (1981); *People v Taylor,* 93 Mich App 292; 287 NW2d 210 (1979), lv den 408 Mich 928 (1980); *People v Perry,* 91 Mich App 79; 282 NW2d 14 (1979), lv den 408 Mich 928 (1980); *People v Hall,* 88 Mich App 324; 276 NW2d 897 (1979), lv den 406 Mich 941 (1979). These cases held that the surreptitious recording of a conversation constitutes an invasion of privacy as serious as that which occurs when a participant transmits a conversation to a third party. Cf. *People v Dubose,* 91 Mich App 633; 283 NW2d 644 (1977).

However, the instant case did not involve electronic devices. Defendant made his telephone call from an unenclosed telephone located in a public place with people one foot and two feet away from him. Further, Mary Fisher told him that Detective Kellogg was with her and defendant even spoke with him. As stated in *Katz v United States,* 389 US 347, 361; 88 S Ct 507; 19 L Ed 2d 576 (1967) (Harlan, J., concurring):

> Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or

statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable. Cf. *Hester v United States* [265 US 57; 44 S Ct 445; 68 L Ed 898 (1924).]

Therefore, the trial court's ruling that defendant had no reasonable expectation of privacy in the telephone conversation is not clearly erroneous. Our disposition of this issue renders it unnecessary to address the trial court's alternative ruling regarding exigent circumstances. See *Parsonson v Construction Equipment Co*, 18 Mich App 87, 90; 170 NW2d 479 (1969), aff'd 386 Mich 61; 191 NW2d 465 (1971).

II

Defendant next argues that the trial court abused its discretion by failing to suppress several incriminating statements defendant made on four occasions to police officers in the absence of *Miranda* warnings. *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

The first statements at issue were those made on June 15, 1985, during the phone conversation with Mary Fisher and Detective Kellogg while defendant was clearly the "focus" of the police investigation. Defendant does not dispute that he was not in police custody at the time, but urges this Court to follow the "focus" standard as enunciated in *People v Wallach*, 110 Mich App 37, 47-50; 312 NW2d 387 (1981), vacated on other grounds 417 Mich 937 (1983). See also *People v D'Avanzo*, 125 Mich App 129, 133; 336 NW2d 238 (1983).

The Michigan Supreme Court recently resolved

the question whether "focus" or "custody" triggers the need to give *Miranda* warnings. In *People v Hill,* 429 Mich 382; 415 NW2d 193 (1987), the Supreme Court determined that *Miranda* warnings must only be given where there is "custody" and that the fact that an individual has become the "focus" of an investigation does not trigger the *Miranda* requirement. *Id.,* pp 391-394.

In this case, defendant was not in custody and the statements he made to Detective Kellogg were not the product of custodial interrogation. No *Miranda* warnings were required under the circumstances and the trial court did not abuse its discretion in failing to suppress these statements.

Next, defendant argues that the trial court erred in failing to suppress statements made to Officer David Walters at the time of defendant's arrest, shortly before 9:00 P.M. on June 16, 1985. Defendant stated, "Something to the effect of a guy attacked my wife, I hit him, and I guess he died." At the arrest, Walters asked defendant his name, and advised defendant that he was under arrest for a homicide committed in Charlotte. Defendant was not given *Miranda* warnings. Defendant argues that the Battle Creek police deliberately delayed giving him *Miranda* warnings so as to invite spontaneous and incriminating statements.

In order to safeguard the constitutional privilege against self-incrimination, *Miranda* warnings must be given in instances in which a defendant is subjected to custodial interrogation. 384 US 444. Interrogation has been held to constitute a practice that police knew or reasonably should have known was likely to invoke an incriminating response. *Rhode Island v Innis,* 446 US 291, 300-302; 100 S Ct 1682; 64 L Ed 2d 297 (1980); *D'Avanzo, supra,* p 134. Where a defendant is in custody, spontaneous and voluntary statements not the

product of "interrogation" within the meaning of *Rhode Island v Innis* need not be suppressed. Thus, statements volunteered by defendant need not be suppressed at trial, even if the remarks were not preceded by *Miranda* warnings. *Miranda, supra,* p 478; *People v Giuchici,* 118 Mich App 252, 261; 324 NW2d 593 (1982).

In this case, Officer Walters testified that defendant made his incriminating admission immediately following his arrest. Officer Walters had asked defendant his name, but asked no further questions of defendant. Therefore, defendant's statement to Officer Walters was not the product of police interrogation.

We are troubled by defendant's allegations that the practice of the Battle Creek police department was to delay the giving of *Miranda* warnings so as to possibly elicit incriminating responses from individuals following their arrest. We note that, in a proper case, proof of such conduct may amount to conduct reasonably likely to elicit an incriminating response under *Rhode Island v Innis, supra.* However, this is not such a case because of the instantaneous nature of defendant's statement immediately following his arrest. It was unrequested and uninvited, and clearly not the product of police interrogation. Therefore, the trial court did not abuse its discretion in failing to suppress this statement.

Defendant next objects to the admission of statements made subsequent to his arrest and after *Miranda* warnings had been given. At approximately 3:30 A.M. on June 17, 1985, almost 6½ hours following his arrest, defendant was brought from his cell into the booking area of the Battle Creek police department and confronted by a number of police officers. Without further *Miranda* warnings, Chief Howe asked defendant "if he

could read and write the American language." Defendant replied that he could, whereupon Chief Howe held up a copy of defendant's arrest warrant. Defendant looked at the warrant for from forty-five seconds to one minute, apparently reading, dropped his head and said, "I didn't mean to kill him."

In *People v Benjamin,* 101 Mich App 637; 300 NW2d 661 (1980), lv den 414 Mich 870 (1982), this Court held that a deputy sheriff's act of displaying incriminating evidence, knives, was not the functional equivalent of an "interrogation" within the meaning of *Rhode Island v Innis, supra.* Defendant's incriminating response was admissible even though not preceded by fresh *Miranda* warnings.

Similarly, in *People v Rowen,* 111 Mich App 76; 314 NW2d 526 (1981), an officer's act of placing incriminating evidence within defendant's view was not conduct reasonably likely to elicit an incriminating response. In *Rowen,* the Court noted as significant the fact that defendant had previously been informed of his *Miranda* rights.

In this case, the conduct of Chief Howe in placing defendant's arrest warrant before him for his inspection cannot be considered conduct reasonably likely to elicit an incriminating response. Defendant had been given *Miranda* warnings, and his response to reading the warrant was spontaneous. We find no abuse of the trial court's discretion by failing to suppress this statement.

Finally, defendant challenges the admission of statements made to Chief Howe and Detective Kellogg following his arraignment, in which defendant requested and was appointed trial counsel. On his return trip to jail, defendant was seated in the back seat of the police car. Defendant made a series of unsolicited statements, punctuated by pauses of from twenty to thirty seconds: "It

sounded like that prosecutor is out to put me away for a long time"; "I wasn't going to run away like he said I was. I was going to turn myself in"; "I didn't mean to kill him"; and "He was there using all my stuff." Neither Detective Kellogg nor Chief Howe administered *Miranda* warnings, or said anything to defendant. The trial court found that these statements were voluntary and spontaneous, and not the result of custodial interrogation. The trial court did not abuse its discretion by failing to suppress these statements.

III

Defendant next claims that the trial court erred by instructing the jury on self-defense but omitting the instruction that states that there is no duty to retreat in one's own home. He contends that, although he had not slept or resided at the home where the knifing occurred, he was still legally married to Mary Fisher, who lived there, and he still made land contract payments on the home, which entitled him to the omitted portion of the jury instruction he requested. The trial court ruled that the defendant was not in his own home for purposes of the no duty to retreat rule.

CJI 7:9:03 provides in relevant part:

If a person [assaulted the defendant in (his/her) own home/forcibly entered the defendant's home], the defendant was under no obligation to try to retreat or escape. Under such circumstances, the defendant was entitled to stand [his/her] ground and repel the [attack/intrusion] with as much force as appeared necessary for the defense of [his/her] person at the time.

The instruction is appropriate where a person is assaulted in his own home and where the degree

of force used is necessary for the defense of his person. See *People v Oster (On Resubmission),* 97 Mich App 122, 132; 294 NW2d 253 (1980), lv den 411 Mich 920 (1981).

A trial court's failure to instruct the jury that a person has no duty to retreat in one's own home, where appropriate, constitutes error requiring reversal. *People v Godsey,* 54 Mich App 316, 320; 220 NW2d 801 (1974). However, Michigan case law does not provide a precise definition of "dwelling" or "home" for purposes of the "no retreat" rule. *Id.* In *Godsey,* the instruction was held to be inappropriate where the defendant fatally assaulted the victim on or near the lot line separating his property from the deceased. This Court noted the general rule regarding self-defense that retreat is required where practicable prior to use of deadly force. The panel's discussion of the rationale behind the "no retreat in dwelling" exception is instructive:

> The justification for this exception to the general rule is difficult to pinpoint. Justice Cardozo, in *People v Tomlins,* 213 NY 240, 243; 107 NE 496, 497 (1914), observed:
>
> "It is not now, and never has been the law that a man assailed in his own dwelling, is bound to retreat. If assailed there, he may stand his ground, and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home." See *People v McGrandy,* 9 Mich App 187; 156 NW2d 48; 26 ALR3d 1292 (1967).
>
> Dean Prosser has suggested that the no retreat rule is based on " 'an instinctive feeling that a home is sacred, and that is it improper to require a man to submit to pursuit from room to room in his own house.' " Prosser, Torts (4th ed), § 19, p 111, quoting from Restatement of Torts, Tentative Draft, Commentary to § 84.
>
> On a more pragmatic level it can be argued that

one's own dwelling is presumptively the safest haven from attack and retreat therefrom would correspondingly increase the risk of harm and thus be impractical and unnecessary. [*Id.,* p 319.]

The determinative factor in cases involving the "no retreat" rule is not property ownership, but rather the location where a person resides. See *Godsey, supra; People v Mathis (On Remand),* 75 Mich App 320; 255 NW2d 214 (1977); *People v Smith,* 54 Mich App 652; 221 NW2d 464 (1974).

Notwithstanding defendant's ownership interest in the home where the incident occurred, he had not resided in the home for the previous eight months. Therefore, the trial court did not err by failing to give this instruction.

IV

Defendant next asserts that the trial court erred by instructing the jury to deliberate on first-degree murder before deliberating on second-degree murder. He contends that the "open murder" statute under which he was charged, MCL 767.71; MSA 28.1011, requires the jury to first consider the lesser offense before considering the additional elements which serve to raise his culpability. However, defendant has presented no authority for distinguishing this situation from cases in which a defendant is charged with first-degree murder.

In *People v Handley,* 415 Mich 356, 361; 329 NW2d 710 (1982), a case that addressed the question in what order the jury should consider first-degree murder, second-degree murder and manslaughter, the Supreme Court provided mandatory instructional language for the order of jury deliberation on principal and lesser included offenses:

Consequently, a jury instructed after the day

this opinion is released must be told to consider the principal charge first. It should then be instructed that if it fails to convict or acquit *or is unable to agree* whether to convict or acquit on that offense, it may then turn to lesser offenses. The correct instruction would be that after the jury has given consideration to the greater offense, it may turn to lesser offenses *either* if it finds the defendant not guilty of the greater offense *or* if it is unable to agree on whether the defendant is guilty or not guilty of the greater offense. The judge may add that it is for the jury to decide how long to spend considering the greater offense before turning to a consideration of lesser offenses or, stated differently, it is for the jury to decide whether, having failed to reach an agreement on guilt or innocence on a greater offense, to spend *more time in an attempt to reach unanimous* agreement on the greater offense or whether the time has come to turn to lesser offenses. The judge may also add that of course the jury will not turn to lesser offenses if it finds the defendant guilty of the greater offense. [Emphasis in original.]

The *Handley* ruling is encompassed within CJI 3:1:15A, "Order of Jury Deliberation."

In this case, the trial court's instruction was proper and comported with CJI 3:1:15A. Defendant's argument is therefore without merit.

V

Defendant next claims that the trial court abused its discretion by summarily denying the jury's request for a Webster's Dictionary. He concedes that it would have been improper for the trial court to have granted the request, but maintains that the trial court failed to make further inquiry or to clarify the instructions already given.

Jury deliberation began at approximately 8:30 A.M. on January 30, 1986. At 10:41 A.M., the jury

sent a note requesting written definitions on the principal and lesser included offenses. Later, a second note repeated the request. The jury was brought back into the courtroom and reread a series of instructions on the possible verdicts. The jurors returned to the jury room at 11:15 A.M. At 12:29 P.M., the court received another note and brought the jury back once more. When the jurors were seated, the trial court informed them that their request for a Webster's Dictionary could not be granted.

We note that defendant did not raise this issue in the trial court and, thus, absent manifest injustice, this Court will not review the issue. See *People v Lyles,* 148 Mich App 583, 595; 385 NW2d 676 (1986).

The decision to provide additional instructions at the request of the jury is a matter within the discretion of the trial court. *People v Martin,* 392 Mich 553, 558; 221 NW2d 336 (1974). Defendant relies on *Martin* for the proposition that, where confusion is expressed by the jury, it is incumbent upon the trial court to guide the jury by providing the relevant law. *Id.,* p 558. He attempts to draw an inference of confusion from the jury's request for a dictionary. However, the record does not reveal such confusion, particularly since the trial court twice instructed the jury on all possible verdicts. The trial court did not abuse its discretion by denying the request for a dictionary and no manifest injustice exists requiring appellate review, *Lyles, supra.*

VI

Defendant's final claim of error is that the trial court's imposition of a forty- to sixty-year sentence constituted a departure from the sentencing guide-

lines range which should shock the conscience of this Court.

Departures from the sentencing guidelines are encouraged and permitted. *People v Purzycki,* 143 Mich App 108, 109; 371 NW2d 490 (1985). The reasons for departure from the recommended sentencing guidelines must be articulated at sentencing and placed on the sentencing information report. *People v Fleming,* 428 Mich 408, 428-429; 410 NW2d 266 (1987). The judge must give specific explanations for departure where there are special characteristics of the offense or offender necessitating a departure or where the judge believes the recommended ranges are inappropriate; where the judge finds no special characteristics, he must provide a specific explanation of why the guidelines range did not reflect the sentencing practices of the state's trial judges. *Id.,* p 426.

While a sentence of from forty to sixty years imprisonment, which far exceeded the recommended minimum sentencing range of seven to sixteen years,[1] may shock this Court's conscience in a proper case, we are unable to determine whether this constitutes such a case without a more complete record of the sentencing court's reasons for departure. Therefore, we remand this case for resentencing with defendant to be present.

Remanded for resentencing.

[1] Defense counsel argued that the guidelines range should have been computed at two to nine years.