PEOPLE v FISHER (AFTER SECOND REMAND)

Docket No. 119148. Submitted May 8, 1991, at Lansing. Decided
    August 6, 1991, at 9:30 A.M. Leave to appeal sought.

Richard E. Fisher was convicted by a jury in the Eaton Circuit
    Court of second-degree murder. The court, Richard M. Shuster,
    J., sentenced him to forty to sixty years in prison. He appealed,
    and the Court of Appeals, M. J. KELLY, P.J., and DOCTOROFF
    and J. T. CORDEN, JJ., affirmed the conviction but remanded for
    resentencing and explanation on the record of the reason for
    departure from the minimum sentencing guideline range of
    seven to sixteen years. 166 Mich App 699 (1988). On remand,
    the trial court again sentenced the defendant to a term of forty
    to sixty years, stating its rationale. The Court of Appeals,
    MICHAEL J. KELLY, P.J., and DOCTOROFF and CYNAR, JJ.,
    granted the defendant's motion for peremptory reversal, set
    aside the sentence, and again remanded for resentencing, this
    time before a different judge, finding the rationale totally
    inappropriate. 176 Mich App 316 (1989). On second remand, the
    sentencing court, Patrick H. McCauley, J., sentenced the defen-
    dant to a term of twenty-five to fifty years. The defendant again
    appealed.

    After second remand, the Court of Appeals held:

    1. The sentencing court erred in failing to delete from the
    presentence investigation report a statement by the defendant's
    then estranged wife that was barred by the confidential com-
    munications privilege and another statement that the court
    stated it would not consider for sentencing purposes. The
    defendant's sentence must be vacated and the two statements
    must be deleted from the presentence report.

    2. The information utilized by the sentencing court in reach-
    ing the conclusion that the murder was premeditated was the
    same information that the court stated it would not consider
    for sentencing purposes. That information must be stricken
    from the presentence report.

    3. On third remand, the sentencing court must utilize the

REFERENCES
Am Jur 2d, Criminal Law §§ 527, 538, 595; Witnesses §§ 153, 155.
Effect of divorce or annulment on competency of one former spouse
    as witness against other in criminal prosecution. 38 ALR2d 570.

original sentencing guidelines in resentencing the defendant. The errors attributable to the circuit court should not result in the defendant's facing the possibility of a harsher sentence pursuant to the revised sentencing guidelines, which were not applicable when the defendant was first sentenced.

4. Resentencing, consistent with the principle of proportionality of *People v Milbourn,* 435 Mich 630 (1990), must take place before a different circuit court judge.

Reversed and remanded for resentencing before a different judge.

1. WITNESSES — HUSBAND AND WIFE — SPOUSAL PRIVILEGE — CONFIDENTIAL COMMUNICATIONS.

Michigan recognizes two types of marital privilege preventing a person from testifying against a spouse without the spouse's approval: a spousal privilege, which precludes a spouse from testifying against the other spouse during the marriage and does not survive the dissolution of the marriage relationship, and a confidential communications privilege, which is absolute and precludes a spouse from testifying without the other spouse's consent with regard to any confidential communication that occurred during the marriage irrespective of a subsequent divorce (MCL 600.2162; MSA 27A.2162).

2. SENTENCES — PRESENTENCE REPORTS — CHALLENGED INFORMATION.

Information contained in a presentence report challenged by a defendant that the court states it will disregard in sentencing must be stricken from the presentence report (MCR 6.425[D][3][a]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *G. Michael Hocking,* Prosecuting Attorney, and *William M. Worden,* Assistant Prosecuting Attorney, for the people.

*Donald L. Correll,* for the defendant on appeal.

AFTER SECOND REMAND

Before: SHEPHERD, P.J., and WAHLS and R. B. BURNS,* JJ.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Per Curiam. This case is before this Court for a third time. On January 30, 1986, following a jury trial in the Eaton Circuit Court, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549. Defendant was sentenced on June 23, 1988, to a term of forty to sixty years in prison. In *People v Fisher,* 166 Mich App 699; 420 NW2d 858 (1988), defendant appealed his sentence of forty to sixty years, which was far beyond the recommended minimum sentencing guideline range of seven to sixteen years. We remanded the case for resentencing, instructing the sentencing court to specifically explain on the record the reason for this considerable departure. *Id.,* p 715. On remand, the sentencing court once again sentenced defendant to a term of forty to sixty years in prison. In imposing defendant's sentence, the sentencing court stated that when individuals reach the age of sixty they seldom commit violent acts. Therefore, by sentencing defendant, then age twenty-seven, to a minimum term of forty years, he would be age sixty-seven upon his release. Thus, the court concluded that the imposed sentence would give society "some degree of assurance that the defendant would not do a like act under like circumstances." See *People v Fisher (After Remand),* 176 Mich App 316, 318; 439 NW2d 343 (1989).

Subsequently, we granted defendant's motion for peremptory reversal. Upon review, we found that the sentencing court's rationale for the imposed sentence was "totally inappropriate, and derogat[ed] the bases for sentence reform which underlie the promulgation of the sentencing guidelines." *Id.* Thus, we remanded defendant's case for resentencing before a different circuit court judge. *Id.*

On May 26, 1989, defendant was sentenced a

third time to twenty-five to fifty years in prison. The defendant has again appealed, and we once again set aside defendant's sentence and remand this case for resentencing before yet another circuit judge.

In this appeal, defendant first argues that the sentencing court erred in failing to delete from the presentence investigation report statements made by defendant's ex-wife. We agree.

Defendant's murder conviction arose from the stabbing death of William Tappert, an acquaintance of defendant's then estranged wife, Mary Fisher, which occurred at the residence defendant and his wife once shared. The challenged statements made by defendant's estranged wife, as reported in the presentence report are as follows:

>   (1) [Defendant]: *"Is your fucking boyfriend here? Tell him to come in here so I can stick him a couple of times."*
>   (2) She started to cry and asked [defendant], *"Did you stab him?"*, to which he replied, *"Fuck yes I stuck him."*
>   (3) Mary followed [defendant] out of the house and *[defendant] told her to tell the police that Tappert had fallen into the knife.* [Emphasis added.]

We note initially that defendant concedes that the second statement was not a privileged communication because of the presence of a third party (Ms. Fisher's son) when the communication was made. Thus, we will only consider the admissibility of the remaining two statements.

When defendant was originally sentenced in 1988, the sentencing judge granted defendant's motion to strike Mary Fisher's comments from the presentence report, pursuant to the spousal privilege doctrine. However, when this matter came

before a different judge on the second remand, Mary Fisher's statements were still in the presentence report and again the statements became the subject of a motion to strike, this time with a different result.

Defendant and Mary Fisher were divorced during the period between the first and third sentencing proceedings. During the third sentencing hearing, in response to defendant's motion to strike Ms. Fisher's second and third statements, the court concluded that the spousal privilege terminated at the divorce and that, therefore, the statements were not barred by the spousal privilege doctrine. Defendant further argued that the statements were inadmissible as hearsay; however, the court admitted the statements pursuant to MRE 1101(b)(1), (3).

The spousal privilege doctrine is codified in this jurisdiction, and this Court has held:

> MCL 600.2162; MSA 27A.2162 contains two distinct privileges. The first privilege, *the spousal privilege,* bars one spouse from testifying for or against the other spouse without the other spouse's consent where the witness and the spouse are married at the time of trial. The second privilege, *the confidential communication privilege,* bars one spouse from testifying as to any communications made by one to the other during the marriage without the consent of the other spouse. The communication privilege applies whether the testimony is sought during the marriage or afterwards, as long as the communication occurred during the course of the marriage. [*People v Zak,* 184 Mich App 1, 17; 457 NW2d 59 (1990). Citations omitted. Emphasis added.]

Thus, in Michigan, we distinguish two types of marital privileges: a spousal privilege, which precludes a spouse from testifying against the other

spouse during the marriage and does not survive the dissolution of the marital relationship, and a confidential communications privilege, which is absolute and precludes a spouse from testifying with regard to any confidential communication that occurred during the marriage irrespective of a subsequent divorce.

After a careful review of the record, we conclude that the sentencing court erred in determining that the confidential communications privilege did not survive defendant's divorce. Therefore, the third statement at issue, which was a request by defendant to his estranged wife asking her to lie to the police, was barred by the confidential communications privilege. An element of confidentiality is implicit in a request to tell a lie.

During the sentencing procedures, the sentencing court ruled that while it would consider the second and third statements for sentencing purposes, it would not consider the first statement. Specifically, the court stated that with the exception of the second and third statements, "I can say that [the remaining statement is] her opinion and her version versus his version and it would not affect the outcome of the sentence of this court." However, the first statement was not deleted from the presentence report.

Our court rules provide that if the sentencing court finds merit in a challenge to information contained in the presentence report, the court is not to take the challenged information into account in sentencing, and "it must direct the probation officer to correct or delete the challenged information in the report . . . ." MCR 6.425(D)(3)(a). Here, because the sentencing court clearly indicated that it would not use Mary Fisher's first statement for sentencing purposes, consistent with the court rule, that statement should have been

stricken from the presentence report. *People v Newson (After Remand)*, 187 Mich App 447, 450; 468 NW2d 249 (1991); *People v Swartz*, 171 Mich App 364, 379-381; 429 NW2d 905 (1988).

Thus, because of the error in sentencing attributable to the sentencing court's reliance on the statement barred by the confidential marital communications doctrine and the failure to strike from the presentence report challenged information that the court determined it would not use in imposing defendant's sentence, we vacate defendant's sentence and instruct the sentencing court to delete Mary Fisher's first and third statements from the presentence report.

In a related issue, defendant argues that although he was convicted of second-degree murder, the sentencing judge made statements at the sentencing hearing that indicated his belief that defendant's actions were premeditated. In other words, defendant argues that the sentencing court erroneously sentenced him for a charge of which he was acquitted, namely, first-degree murder.

During the sentencing hearing, in reliance upon Mary Fisher's first statement, as reported in the presentence report, the sentencing court stated as follows:

> I also made some findings that [defendant] intended to stab [the victim]. There's no question in my mind, it was intentional.
>
> * * *
>
> I spelled it out that when [Mary Fisher]—on page 4, where there's a statement by her that, "Is your fucking boyfriend here? Tell him to come out here so I can stick him a couple of times." That's almost premeditated talk. Most importantly then when you get on page 5, when she asks, "Did you stab him?" He replied, "Fuck yes, I stuck him."

> That's intentional. That's gross. That's not an accidental matter.

We simply note that the information utilized by the sentencing court in reaching the conclusion that the murder for which defendant was convicted was premeditated is the same information that the sentencing court ruled would not be used in considering an appropriate sentence for defendant. On remand, the first statement must be stricken from the presentence report.

Next, defendant contends that the retroactive application of the revised sentencing guidelines to the sentence on appeal here was a violation of his constitutional right to due process. Specifically, defendant argues that because he was resentenced twice as a result of the court's errors, and despite the fact that the second sentence was shorter and within the revised minimum sentencing guidelines range, it is simply unfair for him to now be subjected to a harsher recommended sentence. In sum, defendant argues that he should not be penalized because of prior errors attributable to the circuit court. We agree.

The revised guidelines, which became effective on October 1, 1988, were not applicable when defendant was first sentenced. Under the original guidelines, the recommended minimum sentence range was seven to sixteen years; however, under the new guidelines, the recommended minimum sentence range is ten to twenty-five years.

While Administrative Order No. 1988-4, 430 Mich ci, requires the circuit courts to apply the second edition of the sentencing guidelines when sentencing a defendant after October 1, 1988, our Supreme Court has observed that "[j]udges are permitted to depart from the sentencing guidelines, and are required merely to explain their

reasons for doing so." *People v Potts,* 436 Mich 295, 302; 461 NW2d 647 (1990). This fact notwithstanding, the guidelines are " 'a tool to assist the sentencing judge in the exercise of discretion.' " *Id.,* p 303 (quoting *People v Potts,* 181 Mich App 311, 313; 448 NW2d 820 (1989), aff'd 436 Mich 295; 461 NW2d 647 (1990). Thus, as the name implies, the sentencing guidelines are the initial guide or tool from which a given sentence is derived. In this case, because lower court errors necessitated a previous remand of this action, the sentencing court on second remand was guided by a harsher recommended sentencing range than that which defendant was originally subjected to. Implicitly, such a result is unacceptable.

In this state, an accused is guaranteed the right to appeal his sentence, Const 1963, art 1, § 20, and the United States Supreme Court has observed:

> "[P]enalizing those who choose to exercise" constitutional rights, "would be patently unconstitutional." And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to "chill the exercise of basic constitutional rights." . . .
>
> A court is "without right to . . . put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. . . ."
>
> "This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." [*North Carolina v Pearce,* 395 US 711, 724; 89 S Ct 2072; 23 L Ed 2d 656 (1969). Citations omitted.]

Here, after careful review and consideration, we conclude that the errors attributable to the circuit court should not result in defendant's facing the

possibility of a harsher sentence pursuant to the revised sentencing guidelines. If a more severe sentence is indeed imposed on remand, it must be for other reasons. See *People v Mazzie,* 429 Mich 29; 413 NW2d 1 (1987). Therefore, on remand, we instruct the sentencing court to utilize the original sentencing guidelines in resentencing defendant.

In *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), our Supreme Court abandoned the "shock the conscience" test articulated in *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), and held that a sentence is an abuse of discretion if it violates the principle of proportionality. While no specific definition of the "principle of proportionality" is provided in *Milbourn,* it is clear that the concept includes consideration of both the seriousness of the crime involved and the criminal history of the offender. *Milbourn,* pp 650-654. Our Supreme Court further observed that this principle is generally reflected in the second edition of the sentencing guidelines:

> We believe that the gradation of recommended sentencing ranges within the guidelines indicates not only that the full statutory range of possible sentences is being used, but also that the recommended ranges increase as the factors that are adequately represented in the guidelines become more serious. For this reason, we believe that it is safe to assume that in the eyes of the vast majority of trial judges who have chosen to impose sentences within the guideline ranges, the guidelines reflect the relative seriousness of different combinations of offense and offender characteristics. [*Id.,* p 658.]

Nevertheless, the Court further observed:

> Conceivably, even a sentence within the sentencing guidelines could be an abuse of discretion in

unusual circumstances. . . . Just as the guidelines may not be a perfect embodiment of the principle of proportionality, so too may a sentence within the guidelines be disproportionately severe or lenient. Thus . . . *the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.* [*Id.,* p 661. Citations omitted. Emphasis added.]

In the instant case, the sentencing court did not have the benefit of the *Milbourn* decision at the time of sentencing; however, we are assured that on remand the sentencing court will impose a sentence consistent with the principle of proportionality as set forth in *Milbourn.*

Finally, in light of the incidents that occurred below on remand and were brought before this Court in this appeal, we conclude that it is necessary for us to make sua sponte, a determination with regard to whether defendant should be resentenced before yet another circuit court judge.

In determining whether resentencing should take place before a different judge, this Court applies a tripartite test: (1) whether the original judge reasonably would be expected upon remand to have substantial difficulty in putting out of mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *People v Evans,* 156 Mich App 68, 72; 401 NW2d 312 (1986). See also *People v Hughes,* 165 Mich App 548, 549-550; 418 NW2d 913 (1987).

Viewing defendant's sentence in light of the

applicable considerations, we conclude that resentencing should take place before a different judge.

Reversed and remanded for resentencing consistent with this opinion. We do not retain jurisdiction.